**James R. FRENCH, Plaintiff-Appellant,**

v.

**JINRIGHT & RYAN, P.C. ARCHITECTS, Defendant-Appellee.**

No. 83–8108.

United States Court of Appeals, Eleventh Circuit.

June 29, 1984.

John A. Barley and Bruce P. Anderson, Tallahassee, Fla., for plaintiff-appellant.

Tom Young, Valdosta, Ga., William U. Norwood, Thomasville, Ga., for defendant-appellee.

Before GODBOLD, Chief Judge, RONEY and KRAVITCH, Circuit Judges.

RONEY, Circuit Judge:

This is a contractor's suit against an architect for damages due to construction delays caused by the architect. The district court granted a summary judgment for the defendant architect on the ground that a prior arbitration proceeding effec-

---

tively barred the litigation of these claims because they had been litigated in the arbitration proceedings and the plaintiff had received through arbitration some satisfaction for the damages claimed. The Georgia law prohibits continued litigation of inconsistent remedies after satisfaction has been obtained. Because we cannot tell from this record whether the claims here asserted were in fact decided in the arbitration proceeding or whether the plaintiff received the satisfaction contemplated under the Georgia statute, we vacate the summary judgment and remand for further proceedings.

The Thomas County Board of Commissioners contracted with defendant Jinright & Ryan, P.C. Architects, for architectural services for, and to administer the construction of, additions and changes to the Thomas County Courthouse. The plaintiff James R. French was the contractor for that work.

Plaintiff French alleges in this suit that due to the acts and omissions of Jinright, he was unable to perform the work as planned, and that reliance on Jinright's erroneous representations in the design and construction documents interfered with his performance of the contract. Consequently, the plaintiff was unable to render performance in a timely fashion. French's contract was terminated July 3, 1979, by Thomas County on the recommendation of Jinright. The Board of Commissioners confirmed this decision on July 10, 1979.

Thereafter, French filed his notice of intent to arbitrate with the American Arbitration Association as required by his contract with Thomas County. The contract expressly excluded Jinright and others from being joined in such arbitration action without their written consent. Thomas County responded with an answer and counterclaim, but shortly thereafter withdrew from arbitration. French obtained an order compelling arbitration from federal district court pursuant to 9 U.S.C.A. § 4.

The Construction Industry Arbitration Tribunal of the American Arbitration Association conducted the arbitration. The arbitration panel held in favor of plaintiff French and awarded him $5,500. The district court affirmed the arbitration panel's award. The issue in this case is whether that arbitration and award forecloses plaintiff French's suit against Jinright.

The district court concluded that the claims for Jinright's defaults which led to plaintiff's damage were asserted in the arbitration proceeding against Thomas County on a *respondeat superior* theory. It is helpful to quote at length from the district court's opinion and order.

### Portion of District Court Order

Because the Defendant contends that the Plaintiff now seeks to recover from it substantially the same damages he previously sought from Thomas County in the arbitration proceedings arising from the same circumstances, it is necessary to compare the Plaintiff's present claim against the Defendant to that previously asserted against Thomas County.

On August 16, 1979 the Plaintiff served on Thomas County a "Notice of Intent to Arbitrate" and in this notice stated that it was the Plaintiff's intention "to arbitrate all outstanding claims in dispute between Petitioner as contractor and Respondent as owner" under the construction contract, and then the notice describes "the nature of the claims in dispute", then the notice proceeds to describe in general terms the Petitioner's contention that he was improperly delayed in the performance of the work and that his work was improperly represented to his bonding company, etc., and the notice then sets out in two paragraphs the following claims with regard to alleged wrongful acts of omission and commission on the part of the architect:

"3. In addition to the foregoing acts and omissions, during the course of Petitioner attempting to perform the work required under the Contract, Petitioner discovered concealed conditions which were at variance with those depicted in the plans and specifications, thereby causing Petitioner to be delayed in his progress of the work and to incur in-

creased costs for the additional labor, material and overhead required to perform the work under these changed conditions."

"4. In addition to the foregoing acts and omissions, during the course of Petitioner attempting to perform the work required under the Contract, the project architect failed or refused to perform in the manner and to the extent required of him under the Contract, thereby causing Petitioner to be without the benefit of the architect's timely and effective (a) inspection of the work, (b) interpretation of the requirements of the Contract documents and (c) judgment of the performance of both Respondent and Petitioner. In short, the project architect failed or refused to exercise his best efforts to insure faithful performance by both Respondent and Petitioner under the Contract and failed or refused to remain impartial in respect of the performance to be rendered by Respondent and Petitioner under the Contract. As a consequence of the project architect's failure or refusal to perform as aforesaid, Petitioner incurred additional delays and increased costs for the additional labor, material and overhead required to perform the work under these circumstances."

At the beginning of the arbitration proceedings the Plaintiff's counsel presented to the arbitration panel a "Brief of Petitioner" which he described as being a summary of what the Petitioner considered to be the "ultimate facts material to disposition of the issues before you" and also a statement of law that he believed to be "applicable to those facts and those issues". Several of the 21 pages of this document are devoted to a recital of the duties which were imposed upon the architect in connection with the construction and several other pages are devoted to a detailed discussion of how the architect either by acts of omission or commission was alleged to have been derelict in the performance of his duties. There is a detailed outline of how the architect failed to approve partial pay requests, failed to make arrangements for the contractor to have reasonable access to the job site, improperly ordered some of the Petitioner's subcontractors off of the job site, improperly recommended to the owner that the owner terminate the contract, and improperly eventually brought about the termination. Then this recital concludes with the statement "Thereafter, the Contractor prepared and filed his Notice of Intent to Arbitrate with the American Arbitration Association and these proceedings ensued".

In that portion of the brief submitted to the arbitrators which sets out the legal basis for the Petitioner's claims the following statement is made.

"In every contract which contains no express covenant to the contrary, there is an implied contract that the contractor shall be permitted to proceed with the construction of the project in accordance with the terms of the contract without interference by the owner." ...

"Like the owner, the architect has an obligation to perform his duties in a timely and complete fashion and to perform them so as not to interfere with, hinder or delay the contractor in the performance of his work. As the owner's agent, the architect is subject to the same implied covenant of good faith and fair dealing which binds the actual parties to the contract."

Finally, in that portion of the brief which deals with the damage claim the following appears:

"As suggested above, should any act or omission of the owner or the architect, or by any officer, employee or authorized representative of either, delay orderly progress of the job, the contractor may recover the damages which fairly and naturally flow from such delay."

The Court is impressed that throughout the arbitration proceedings the Plaintiff's claim was not limited to assertions of negligence or breach of contract on the part of the Thomas County Commissioners. Instead, the Plaintiff's notice of the Plaintiff's intent to arbitrate, his brief submitted

with the arbitration panel and the transcript of the evidence of the arbitration proceedings contained many references to alleged fault on the part of the architect, the Defendant in this case.

### End of District Court Order

This analysis by the district court fails to answer three questions: *First,* were the claims that were based on Jinright's fault and asserted against Thomas County decided on the merits, or on the ground that Thomas County was not responsible, even if Jinright might be? *Second,* does plaintiff, as he insists, have claims that can be asserted against Jinright for which Thomas County would not be responsible and could not have been asserted in the arbitration? *Third,* was the $5,500 obtained through arbitration full satisfaction within the meaning of the Georgia statute, or did the arbitrators decide that there might well be damages but that Thomas County is not liable because it was not the party responsible for causing the harm?

Defendant argues that plaintiff is collaterally estopped from pursuing this action. Absent a record of the claims that have been litigated and the basis of these claims, this Court is unable to determine whether collateral estoppel prevents French from pursuing this action. The doctrine of collateral estoppel has been clearly set forth in *Deweese v. Town of Palm Beach,* 688 F.2d 731 (11th Cir.1982), where this Court articulated the three prerequisites to applying collateral estoppel:

> (1) that the issue at stake be identical to the one involved in the prior litigation, (2) that the issue have been actually litigated in the prior litigation, and (3) that the determination of the issue in the prior litigation have been a critical and necessary part of the judgment in the earlier action.

688 F.2d at 733. If these prerequisites are met, the doctrine of collateral estoppel precludes plaintiff's relitigation of an issue decided in a prior case. *Id.* at 733. *See Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979);

*Collins v. Seaboard Coastline Railroad Co.,* 681 F.2d 1333 (11th Cir.1982). *See also, Rufenacht v. Iowa Beef Processors, Inc.,* 656 F.2d 198 (5th Cir. Unit A 1981), *cert. denied,* 455 U.S. 921, 102 S.Ct. 1279, 71 L.Ed.2d 462 (1982); *Stovall v. Price Waterhouse Co.,* 652 F.2d 537 (5th Cir. Unit A 1981); *Port Arthur Towing Co. v. Owens-Illinois, Inc.,* 492 F.2d 688, 692 n. 6 (5th Cir.1974). An application of collateral estoppel must be premised on a clear determination of the issues litigated in the arbitration proceeding. Although the district court has demonstrated that the claims were similar, the record is not sufficient to show whether all of Jinright's faults were asserted against the County and, if so, whether these were decided on the merits or on the ground that Thomas County was not responsible, even if Jinright might be.

Without a delineation of the disposition of issues in the arbitration proceeding, there is likewise no basis for determining whether French has separate claims against Jinright. *Cf. Bryant v. Rushing,* 121 Ga.App. 430, 174 S.E.2d 226 (1970) (holding plaintiff's settlement of medical claims as full satisfaction with insurer did not bar his negligence claims against the driver of the car).

Even if all of the claims asserted by French were not litigated in the arbitration proceeding, the district court must still consider O.C.G.A. § 9-2-4 (1983). O.C.G.A. § 9-2-4 (1983) provides that "[a] plaintiff may pursue any number of consistent or inconsistent remedies against the same person or different persons until he shall obtain a satisfaction from some of them." The statute does not define satisfaction.

Several cases emphasize that one can pursue inconsistent claims until satisfied. Except for *McLendon Bros. v. Finch,* 2 Ga.App. 421(3a, b), 58 S.E. 690 (1907), these cases do not define satisfaction. In *Newby v. Maxwell,* 121 Ga.App. 18, 172 S.E.2d 458 (1970), a suit against a corporation, the judgment was not paid and the plaintiff had not obtained satisfaction. The plaintiff was allowed to bring a suit against a stock-

holder of the corporation. *Newby* holds that one can pursue inconsistent claims till satisfied, not that any satisfaction is full satisfaction. In *Trollinger v. Magbee Lumber Company*, 132 Ga.App. 225, 207 S.E.2d 701, 703 (1974), the court states that: "[t]he fact that the appellee had obtained judgment against Mr. Parker for the same material would not bar the present action." *Trollinger* does not define any satisfaction as full satisfaction, but provides only that one can pursue inconsistent claims till satisfied.

*McLendon Bros.* states that once a party obtains "full settlement of the cause," his cause of action ends. 2 Ga.App. 421, 58 S.E. at 690, 691, 693; *see Rowland v. Vickers*, 131 Ga.App. 121, 205 S.E.2d 503, 505–07 (1974) (Quillian, J., dissenting).

At oral argument the court discussed with counsel whether it was possible to go behind the general arbitration award and find out what decision was made about issues critical to whether either the general rules of collateral estoppel or the Georgia Code would apply. We do not know that answer. At best, that question would seem to leave questions of fact which can not be decided on summary judgment. Upon remand, it may well be that the parties can provide the court with sufficient uncontested facts to conclude part, if not all, of the case on the affirmative defenses asserted by the defendant. *Cf. Glisson v. Burkhalter*, 31 Ga.App. 365, 120 S.E. 664, 665 (1923) (holding that where settlement is pleaded as an estoppel "the burden is upon the party relying thereon to sustain the plea by showing that the particular matter in controversy was necessarily or actually determined in the prior litigation."). This decision does not foreclose that opportunity. But from the record before us, we can not say that all the claims asserted by the plaintiff have been decided and satisfied.

As supplemental authority Jinright cites the recent Georgia Court of Appeals decision in two consolidated cases, *Nannis Terpening and Associates, Inc. v. Mark Smith Construction Co.* and *Jordan v. Mark Smith Construction Co.*, 171 Ga. App. 111, 318 S.E.2d 89 (1984), which held that the arbitration of the claims there asserted barred state court litigation. Although the facts are similar to this action, the cases are distinguishable in that the arbitration hearings there were conducted with the express understanding that the principal would be liable for whatever construction problems the contractor had encountered that had been caused by the architect and the record was sufficient to answer the questions which remain open in this case.

VACATED and REMANDED.