**CITY OF BISMARCK, Appellant,**

v.

**TOLTZ, KING, DUVALL, ANDERSON AND ASSOCIATES, INC., Appellee,**

v.

**MINN–KOTA EXCAVATING, INC.**

**No. 87–5427.**

United States Court of Appeals, Eighth Circuit.

Submitted May 11, 1988.

Decided Aug. 30, 1988.

Murray G. Sagsveen, Bismarck, N.D., for appellant.

Mark J. Heley, Minneapolis, Minn., for appellee.

Before JOHN R. GIBSON, Circuit Judge, PECK * and HENLEY, Senior Circuit Judges.

PECK, Senior Circuit Judge.

In June of 1978, the City of Bismarck, North Dakota (the City) retained the engineering firm of Toltz, King, Duvall, Anderson and Associates, Inc. (TKDA) for "facility planning" for an interceptor sewer system project known as Hay Creek Trunk Sewer System, Stage VI. In November of 1980, the City and TKDA entered into a second contract for TKDA to prepare plans and specifications for the construction of the project. In April of 1981, the City and TKDA entered into a third contract that called for TKDA to provide engineering supervision of Stage IV of the Hay Creek interceptor sewer project. The contract to construct the addition to the existing sewer system was awarded to Minn–Kota Excavating, Inc. on June 23, 1981. The Stage IV project, a gravity sewer line, was designed to divert sewage away from the overburdened gravity system in the central part of the city to a trunk system around the outskirts of the city. The pipe was to be laid at lower elevations in the southernmost area of the line with generally higher elevations in the northern area of the line.

Minn–Kota began work on the project on July 28, 1981. Problems arose almost immediately concerning the "dewatering" or disposing of surface and ground water in the trenches of the project. The pipe sections sagged and were not in vertical alignment. Water infiltrated the pipe. Minn–Kota complained that pockets of lignite coal were causing the dewatering problems in the trenches. Minn–Kota alleged that the conditions it was encountering were different from those described in the contract. Minn–Kota therefore asked for increased compensation and an extension of time to complete the project. The City refused and on July 15, 1983, Minn–Kota suspended all work on Stage IV. TKDA advised Minn–Kota by letter dated July 18, 1983 that the work done on the sewer project was unsatisfactory.

Minn–Kota and the City of Bismarck attempted to "close out the contract." When efforts failed to work out their differences, Minn–Kota succeeded in compelling the City to submit the issues between Minn–Kota and the City to binding arbitration. Minn–Kota claimed that it was entitled to $1,133,202 from the City for amounts remaining due on the contract. Minn–Kota alleged that the City failed to make payments when due and failed to compensate Minn–Kota for changed conditions on the job. The City, in turn, filed a response to Minn–Kota's arbitration claims and sought $1,434,000 in damages from Minn–Kota for faulty construction of the project.

In April 1984 the City commenced the present action against TKDA, Minn–Kota

and Minn–Kota's surety, St. Paul Fire & Marine Insurance Company, asserting its claims arising from the contract. The City sought a total of $1,434,000 against the three entities in its original complaint filed in federal court. Minn–Kota, however, requested a stay in the court proceedings and argued that the court had previously ordered the City and Minn–Kota to proceed to arbitration and that that decision should have *res judicata* effect. The district court ordered a stay of the proceedings pending arbitration and that order was affirmed by this court at 767 F.2d 429 (8th Cir.1985).

The arbitration proceedings involving Minn–Kota and the City began on August 5, 1985, with TKDA refusing to be a party. The arbitration lasted two weeks. Both sides presented numerous witnesses and extensive documentary evidence. The arbitration panel subsequently ruled that the City owed Minn–Kota $885,058 plus interest and that Minn–Kota owed the City $612,463. After the arbitrators' award, the parties entered into a stipulation to dismiss Minn–Kota and its surety as parties to this action. For their convenience, the parties also stipulated that the City would pay the difference of the two awards to Minn–Kota.

The City then moved to amend its complaint in district court in order to add additional theories of liability as to TKDA and to increase the amount of damages sought. Along with the allegations of improper supervision and inspection of the construction as stated in the original complaint, the City also alleged that TKDA had negligently designed the project. The City, however, later voluntarily dismissed all claims related to TKDA's design of the project.

TKDA moved to dismiss the City's claims on various grounds. Relevant to this appeal was TKDA's assertion that the City's claims for relief against TKDA sought to hold TKDA vicariously or jointly liable for damages arising from Minn–Kota's faulty construction of the project. TKDA urged that the City's claims should be dismissed on grounds of collateral estoppel and accord and satisfaction. In an order dated September 11, 1987, the district court granted TKDA's motion for summary judgment and dismissed the City's claims. The district court found that "the 'issue' in both proceedings is the damage to the City from the alleged failure to build the line according to the specifications." The court determined that "the full and complete issue of *all damages* to the city from non-compliance with specifications was in fact submitted to the arbitration panel and was ruled upon and the damages paid." The court further stated that it also "acknowledges that no one will ever know if the arbitration award was in some way discounted by the panel in an effort to determine the contractor's 'share' of the damages. In this regard, * * * Minn–Kota might well have a cause of action against TKDA for contribution." For the reasons stated below we affirm the order of the district court.

This court in *ARKLA Exploration Co. v. Texas Oil & Gas Corp.*, 734 F.2d 347 (8th Cir.1984), enunciated a four-part test for the application of the collateral estoppel doctrine. The court stated that the use of collateral estoppel is appropriate when: (1) the issue is identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue. *Id.* at 356. The City argues on appeal that TKDA failed to establish two of these elements: the identity of the issues and the full and fair opportunity for the City to be heard. The City also argues that this court should adopt its position in the name of equity.

The amount of damage relief sought by the City before the arbitration panel and originally in district court is illuminating. The City requested the very same amount of damages against Minn–Kota and TKDA together in its original complaint as it did against only Minn–Kota in its arbitration counterclaim. It was only after the arbitrators' award was finalized that the City amended its complaint, asserting additional claims of liability against TKDA, and increasing its request for damages.

The City's delineation of its entitlement to damages in its pre-arbitration brief is also noteworthy. The City states that it "has been directly damaged by having to replace the totally defective system provided by Minn–Kota." The City argues that it "is entitled to recovery of the cost of replacement" in that the "sewer system constructed by Minn–Kota is totally useless." The City further stated that:

The City has been damaged by Minn–Kota's breach of the contract and is entitled to be restored to the position it would have been in had Minn–Kota fulfilled its contractual obligations. The City is entitled to recover the cost of replacing the useless sewer system built by Minn–Kota with a functioning system, plus the increased maintenance costs associated with the replacement sewer system. The City is also entitled to liquidated damages as provided for the contract and interest thereon.

Record at 150–151. In sum, the City argues in its brief that Minn–Kota is liable for the total replacement of the sewer system by the improper construction of the project. No where in the City's statement is it apparent that the City is reserving a demand for damage relief as a result of any special liability or blame attributed to TKDA. Whether Minn–Kota plainly did not build the sewer line according to the specifications, or whether TKDA's careless supervision allowed Minn–Kota to stray from the specifications need not be separated out at this point. The end result and the damage sought are the same.

The arbitrators' award very specifically indicated that its damage calculation reflected the amount of damages each party was entitled to receive for its particular claim.[1] Of importance is the fact that the

City of Bismarck has been fully compensated for the harm done to it from the poor construction of the sewer system. We therefore find that the determination of damages awarded in the arbitration proceeding for faulty construction involved the same damages sought in the City's claims against TKDA for negligent inspection and supervision.

We also conclude that the City had a full and fair opportunity in the arbitration proceedings to litigate the amount of damages resulting from the faulty construction of the sewer project. During the two week hearing, extensive testimony and documentation was presented. TKDA allowed access to its records; its project engineer, Jim Skaret, testified at the hearings on behalf of the City. The question of the damage suffered by the City for the defective sewer line has been fully heard. There is nothing left after the disposal of that issue; other special assertions regarding negligent design have already been dismissed.

We therefore find that the City of Bismarck has received satisfaction in full for the injury suffered as a result of the defective construction of the sewer system. Moreover, punitive damages are not recoverable in this case with no evidence in the record of fraud, oppression or malice. *See Dahlen v. Landis*, 314 N.W.2d 63, 69 (N.D. 1981). If an injured party accepts full satisfaction for his injuries, the law will not permit him to recover again for the same injury. *See Luxenburg v. Can–Tex Industries*, 257 N.W.2d 804, 807 (Minn.1977), *cited with approval in Bartels v. City of Williston*, 276 N.W.2d 113 (N.D.1979). Equity would not be served in awarding the

---

**1.** The City of Bismarck attempts to support its position that the City was only receiving compensation for a portion of its injury by quoting from affidavits of two of the three arbitrators. We have grave reservations concerning the relevancy of the use of an arbitrator's affidavit to subsequently clarify a previous award. *See Local P–9, United Food & Commercial Workers Int'l Union v. George A. Hormel & Co.*, 776 F.2d 1393 (8th Cir.1985) (it is generally improper for an arbitrator to interpret, impeach or explain a final and binding award); *cf. Harvill v. Road-*

*way Express, Inc.*, 640 F.2d 167, 169–70 (8th Cir.1981) (federal court may remand an arbitration award to the arbitration where the award is clearly ambiguous or inconsistent). Even with use of the arbitrators' affidavits it remains clear that the City was awarded full compensation due to the improperly constructed sewer line. The City does not dispute the amount of the award and, in fact, signed a release, waiving any future right to pursue a claim against Minn–Kota.

City more than the arbitrators have determined its damage to be. If any equitable consideration needs to be addressed, it is only the possible claim that Minn–Kota might have remaining against TKDA for contribution. But that is not before us.

We accordingly affirm the order of the district court.

United States Court of Appeals, Eighth Circuit.