**WELLONS, INC., a corporation, Appellant,**

v.

**T.E. IBBERSON COMPANY and Ibberson Engineering, Inc., formerly known as Kibcor Engineering, Inc., corporations, Appellees.**

No. 88–5026.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 21, 1988.

Decided March 16, 1989.

Rehearing Denied April 24, 1989.

Elmer B. Trousdale, St. Paul, Minn., for appellant.

Larry D. Espel, Minneapolis, Minn., for appellees.

Before HEANEY * and FAGG, Circuit Judges, and HENLEY, Senior Circuit Judge.

HEANEY, Circuit Judge.

Wellons, Inc. appeals from a district court order granting summary judgment in favor of T.E. Ibberson Company and Ibberson Engineering, Inc., formerly known as Kibcor Engineering, Inc. We affirm.

* The Honorable Gerald W. Heaney assumed sen-

## BACKGROUND

National Sun Industries, Inc. (NSI) built a sunflower seed processing plant in Enderlin, North Dakota during the years of 1981 and 1982. The plant was designed to produce sunflower oil and meal for sale and to produce hulls which would be burned to produce steam to process the seeds and to generate electricity. NSI retained Ibberson Engineering as engineer on the project and T. E. Ibberson as construction manager.

T.E. Ibberson and Ibberson Engineering (collectively Ibberson) solicited a bid from Wellons for the construction of two steam boilers to burn the seed hulls. Sometime during the bidding process, Ibberson provided Wellons with certain test results from independent testing laboratories which detailed the burning characteristics of the hulls. Wellons apparently used these test results in calculating its bid. This bid was subsequently accepted by NSI.

In late 1982, construction of the boilers was finished. Soon thereafter, NSI began to encounter problems because ash from the sunflower seed hulls fused to the pipes and walls of the boilers. Apparently, the temperature at which the hulls melted was much lower than anticipated and the fused hulls clogged the pipes, reducing the production of steam. Wellons returned to the plant and modified the boilers in an attempt to eliminate this problem.

In January 1984, NSI commenced a lawsuit against Wellons in North Dakota state court, alleging that Wellons had improperly designed the boilers causing it to incur substantial losses. The court stayed the action after Wellons invoked the arbitration clause in its contract with NSI. In August 1985, an arbitration panel awarded NSI $3,623,006 against Wellons. NSI moved to confirm the award in the United States District Court for the District of Minnesota. Wellons cross-claimed, moving the court to vacate the award.

In September 1985, Wellons commenced this action against Ibberson in North Dako-

ior status on December 31, 1988.

ta, alleging that Wellons suffered losses when Ibberson intentionally misrepresented or negligently led Wellons to believe that the burning hull test results were correct. It also sought contribution or indemnification for the arbitration award against it.

Shortly after this suit was filed, but before the Minnesota court had confirmed the arbitration award, NSI and Wellons settled their dispute. Wellons agreed to pay NSI the entire amount of the award. The settlement provided for a mutual release of all claims and for dismissal of the confirmation suit in Minnesota.

Ibberson then sought summary judgment against Wellons in this suit, alleging that the doctrine of collateral estoppel barred Wellons' suit as the issue of Ibberson's liability for the boilers' malfunctioning had been rejected by the arbitration panel. It also alleged that Wellons' claims for contribution or indemnity were barred under North Dakota law.

After considering these arguments, a magistrate recommended that the motion for summary judgment as to the application of collateral estoppel be denied because the finality of the arbitration award was extinguished by the settlement. The district court refused to adopt the magistrate's recommendation as to the application of collateral estoppel in this case because it found that the settlement agreement had adopted the arbitration award, making it "final" for collateral estoppel purposes. Thus, it granted the motion for summary judgment in favor of Ibberson.

## DISCUSSION

Wellons argues on appeal that the district court erred in giving collateral estoppel effect to the arbitration proceeding between Wellons and NSI because no final judgment occurred in that action and because the issues of law and fact involved were different than those presented in this case.

■ Collateral estoppel is appropriate when: (1) the issue sought to be precluded is identical to the issue previously decided; (2) the prior action resulted in a final adjudication on the merits; (3) the party sought to be estopped was either a party or in privity with a party to the prior action; and (4) the party sought to be estopped was given a full and fair opportunity to be heard on the issue in the prior action. *Arkla Exploration Co. v. Texas Oil & Gas Corp.*, 734 F.2d 347, 356 (8th Cir.1984), cert. denied, 469 U.S. 1158, 105 S.Ct. 905, 83 L.Ed.2d 920 (1985). The present case focuses on the first two requirements, as Wellons was a party to the arbitration proceeding and does not allege that it did not receive a fair hearing before the arbitrators.

■ We agree with the district court that an arbitration award may constitute a final judgment for purposes of collateral estoppel. *See City of Bismarck v. Toltz, King, Duvall, et al.*, 855 F.2d 580, 582–83 (8th Cir.1988); *French v. Jinright & Ryan, P.C.*, 735 F.2d 433, 436 (11th Cir.1984); *Jeffers v. Convoy Co.*, 636 F.Supp. 1337, 1339 (D.Minn.1986) (collateral estoppel may be applied to an arbitration decision); *United Food, Etc. v. G. Bartusch Packing Co.*, 546 F.Supp. 852, 855 (D.Minn.1982) (arbitration decision counts as a prior adjudication when defendant seeks to use prior decision to bar plaintiff's claim).

In *City of Bismarck, supra,* the city brought a suit for damages against a sewer project contractor and an engineering firm for the negligent design and construction of a sewage system. As required by their contract, the city and the contractor removed their suit to arbitration. The contractor alleged that the city failed to pay it for construction delays due to faulty plans and soil problems encountered on the job. The arbitration panel found that the contractor owed the city $612,500 for faulty construction and the city owed the contractor $885,000 for payments due under the contract. The city then amended its complaint against the engineering firm in federal district court, increasing its damage request. A panel of this Court held that the arbitration award operated as a final adjudication for collateral estoppel purposes. The panel found that the city was collaterally estopped from suing the engi-

neer for negligent inspection and supervision because the claim that the sewage system was defective had been presented to the arbitrators, the city had argued that the contractor was completely liable for this defect, and the city had received an award equal to the amount it had originally requested in its civil suit against both parties. 855 F.2d at 583. Thus, it is clear that an arbitration award may operate as a final adjudication for the purposes of collateral estoppel.

■ The fact that the award in the present case was not confirmed by a court and was modified by a subsequent settlement agreement does not vitiate the finality of the award. The settlement agreement between Wellons and NSI provides in part:

> Wellons agrees to pay NSI and NSE the entire amount of the net Amended Award issued in the Arbitration Action. This payment reflects both the amount awarded by the arbitrators to Wellons from NSI and the amount awarded to NSI from Wellons.

Appendix at 395.

We agree with the district court that the arbitration award was not vacated, but merely adopted by the parties as a basis for the settlement computation. The settlement agreement, while providing for the dismissal of the action to confirm or vacate the award, does not include any language providing for the vacation of the award. Collateral estoppel applies when the issues have been fully adjudicated regardless of a subsequent settlement agreement. *See Chemetron Corp. v. Business Funds, Inc.,* 682 F.2d 1149, 1191–92 (5th Cir.1982), *vacated and remanded on other grounds,* 460 U.S. 1007, 103 S.Ct. 1245, 75 L.Ed.2d 476 (1983), *initial opinion adhered to on remand,* 718 F.2d 725 (5th Cir.), *cert. denied,* 460 U.S. 1013, 103 S.Ct. 1254, 75 L.Ed.2d 483 (1983) (plaintiff, not a party to prior suit, can invoke offensive collateral estoppel against defendant when prior case has been fully litigated but settled before

entry of final judgment). Thus, we have little problem with the finality of the arbitration award in this case.

■ Far more difficult, however, is whether the issues in this case are identical to those presented to the arbitration panel and if so, whether they were resolved against Wellons. Both parties concede that Wellons raised the issue of Ibberson's negligence and fraud before the arbitration panel. The arbitration award, however, as noted by the district court, contains no findings of fact and merely states a conclusion expressed in dollars with no explanation or rationale.[1] Thus we are presented with the issue of whether collateral estoppel precludes an action against a third party who did not participate in the arbitration proceeding when the arbitrators did not reveal the basis for their decision.

In *French v. Jinright & Ryan, P.C., supra,* a contractor sued an architect for damages due to a construction delay allegedly caused by the architect. The contractor, French, had a contract with the Thomas County Commissioners to construct additions to the county courthouse. It was unable to complete its project on time, allegedly due to faulty plans and specifications provided by Jinright, the architect. Thomas County's breach of contract claim against French had previously been arbitrated as required by their contract. Under the terms of the contract, French was unable to join Jinright in the arbitration proceeding. The arbitration panel awarded French $5,500. The issue presented in *French v. Jinright & Ryan* was whether the arbitration award foreclosed French's suit against Jinright.

The district court in *French v. Jinright & Ryan* compared the issues raised by French against Thomas County in arbitration and those raised by French against Jinright in the lawsuit. It concluded that French was collaterally estopped by the arbitration award as French had argued before the panel and presented in its brief that its failure to fulfill its contractual obli-

---

1. An arbitration award need not contain any detailed description of the arbitrators' findings. *Bernhardt v. Polygraphic Co.,* 350 U.S. 198, 203,

76 S.Ct. 273, 276, 100 L.Ed. 199 (1956); *Wilko v. Swan,* 346 U.S. 427, 436, 74 S.Ct. 182, 187, 98 L.Ed. 168 (1953).

gations was due to Jinright's negligence and fraud. The Eleventh Circuit Court of Appeals reversed and remanded, noting that the district court failed to determine: (1) whether French's claims against Thomas County were decided on the merits, or on the ground that the County was not responsible, even if Jinright might be; or (2) whether French had claims that could be asserted against Jinright for which Thomas County would not have been responsible and could not have been asserted in arbitration. 735 F.2d at 436. These same questions have been raised in this case on appeal. We believe, however, that the record is sufficient for us to resolve them.

Following the analysis suggested by the Eleventh Circuit, our first step is to determine whether the issues before the arbitration panel and before this Court are the same. If so, the next step is to decide whether a determination of Ibberson's negligence or misrepresentation was necessary or essential to the outcome of the arbitration. *See also, Ashe v. Swenson,* 397 U.S. 436, 444, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970) (when previous judgment is based on general verdict, court must decide whether a rational factfinder could have reached a conclusion based on an issue other than that which the defendant seeks to foreclose from consideration); *Tamari v. Bache & Co. (Lebanon) S.A.L.,* 637 F.Supp. 1333, 1336 (N.D.Ill.1986) (same); *Hauser v. Mealey,* 263 N.W.2d 803, 808 (Minn.1978) (collateral estoppel applies only if resolution of the issue was necessary and essential to the resulting judgment). In order to resolve these questions, we must examine the record of the prior proceeding, including the pleadings and evidence, *Emich Motors Corp. v. General Motors Corp.,* 340 U.S. 558, 569, 71 S.Ct. 408, 414, 95 L.Ed. 534 (1951), keeping in mind that the party asserting preclusion bears the burden of showing "with clarity and certainty what was determined by the prior judgment." *Jones v. City of Alton, Ill.,* 757 F.2d 878, 885 (7th Cir.1985).

■ After examining the evidence before the district court on summary judg-ment, we believe that the issues presented before the arbitrators were identical to those raised in this lawsuit. We also believe that the arbitrators could not have found against Wellons without passing on the issue of whether Ibberson was liable for negligently or fraudulently releasing inaccurate test data to Wellons.

At arbitration, NSI alleged that Wellons had breached an express performance guarantee, had misrepresented to NSI its expertise in constructing boilers that burned agricultural products, had breached an express contractual commitment to repair the boilers, had breached an implied warranty of fitness and had failed to meet the standards of design and construction of a reasonable architect or contractor. Wellons defended by alleging that Ibberson, as agent of NSI, acted negligently or fraudulently by giving Wellons inadequate and inaccurate test data, thereby relieving it of any obligation under the contract. The allegations of negligence and misrepresentation are the same as the claims raised by Wellons in its present complaint.

Wellons argues that the issue of Ibberson's liability need not have been determined by the arbitrators. The only alternative holding advanced by Wellons is that the arbitrators could have found that Ibberson was not NSI's agent at the time it gave the test results to Wellons, thereby relieving NSI of any liability for Ibberson's actions.

Ibberson's agency status, however, was never disputed before the arbitration panel. On the first day of the arbitration, counsel for NSI, in response to a question from an arbitrator, stated:

> I think there is no question that Kibcor, or Ibberson, when they were on the National Sun job, acting as its construction agent, is in fact its agent and when they sent something to Wellons, they were doing it on behalf of NSI and NSE. I don't agree that makes them an agency for all purposes and something that some person may know is somehow imputed automatically to NSI and NSE. But for the purposes of their actions, the things they do on this job for NSI and NSE, I

think—I don't know [that] there is an issue.

Appellant's Addendum at 1.

Wellons' briefs submitted to the arbitration panel referred to Ibberson as NSI's agent or attributed Ibberson's actions directly to NSI.[2] NSI's brief before the panel did not dispute this relationship. Wellons may argue that while agency was undisputed, the record is unclear as to whether the arbitrators necessarily determined whether Ibberson's actions were inside or outside of its agency authority. *See Tamari*, 637 F.Supp. at 1338 (agent cannot use arbitration award in favor of principal to collaterally estop lawsuit when scope of agency was undetermined by arbitrators). Yet, NSI never disputed that Ibberson's actions of providing test data to Wellons were authorized by the agency. *See Maidman v. O'Brien*, 473 F.Supp. 25, 32 (S.D.N.Y.1979) (in prior action against principal, principal defended agent's actions on merits and did not dispute that those actions were authorized by the agency; collateral estoppel applied). In fact, NSI stated in its prehearing brief:

> NSI provided to Wellons all data in its possession concerning the characteristics of oil variety sunflower seed hulls. In so providing these data, NSI did not represent that these tests were all that needed to be done by Wellons in order to design and construct the promised boilers * * *.

Appendix at 338.

NSI conceded that it was responsible for giving Wellons the data. Thus, in order to find against Wellons, the arbitrators necessarily found that Wellons had no right to rely on the test data.

After a close examination of the record before us, we believe Ibberson has sustained its burden of proving that the arbitration panel necessarily determined that neither NSI or its agent Ibberson acted negligently or fraudulently in providing the test data to Wellons. Thus, we hold that a rational factfinder could not have reached a conclusion based on an issue other than that which Ibberson seeks to preclude and that collateral estoppel applies in this case.

Wellons also asserts that it properly stated a claim of negligence and misrepresentation against Ibberson independent of its claim against NSI, referring to the $500,000 Wellons allegedly spent to modify the boilers. We disagree. Wellons alleged in its pretrial statement before the arbitrators that "Wellons provided at its expense approximately $500,000 of equipment and labor to lower the operating temperature of the boilers and to mechanically remove the ash build-up." Appendix at 268. Yet, Wellons sought reimbursement from NSI for these modifications from the arbitration panel. As in *City of Bismarck*, it appears that Wellons argued before the arbitrators that NSI was completely liable for these damages. The legal basis on which its claim rests is the alleged fraud or negligence of Ibberson, an issue we believe was necessarily determined by the arbitration panel.

As we hold that Wellons' claims are barred by the doctrine of collateral estoppel, we need not reach the issues of contribution or indemnity.

## CONCLUSION

We affirm the district court's order granting summary judgment in favor of T. E. Ibberson Company and Ibberson Engi-

---

**2.** In its pretrial statement, Wellons wrote:
National Sun, again through Ibberson–Kibcor, informed Wellons that the ash from sunflower seed hulls fused, melted or softened at temperatures of 1,910° F. or greater.
Appendix at 267.
[T]he evidence will show that NSI and its engineering minions * * * had themselves conducted numerous tests and were well informed on ash burning characteristics[.] * * * NSI and its agents assumed responsibility for producing the test data necessary for

the design of this system and this test data was supplied to Wellons in May of 1981.
Appendix at 274.
In its posthearing brief, Wellons reasserted: * * * Wellons was entitled to rely on the information supplied to it by NSI and NSE for purposes of preparing Wellons' bid. * * * By supplying incomplete and insufficient testing information to Wellons, NSI and NSE breached [an] implicit warranty * * *.
Appendix at 360.

neering, Inc. on the basis of collateral estoppel.