The **OMAHA INDEMNITY COMPANY**, et al., Plaintiffs,

v.

**ROYAL AMERICAN MANAGERS, INC.**, et al., Defendants.

No. 86–0422–CV–W–9.

United States District Court, W:D. Missouri, W.D.

Jan. 4, 1991.

---

1452

Joe Rebein, Shook, Hardy & Bacon, Kansas City, Mo., Sheila J. Carpenter, Francis M. Gregory, Jr., Sutherland, Asbill & Brennan, Washington D.C., John W. Bonds, Jr., Carey DeDeyn, J.D. Fleming, Jr., Sutherland, Asbill & Brennan, Atlanta, Ga., for plaintiffs.

Byron Neal Fox, Robert L. Wehrman, Polsinelli, White, Vardeman & Shalton, Kansas City, Mo., James M. Kaplan, Wilson, Elser, Moskowitz, Edelman & Dicker, New York City, Oscar B. Goodman, Goodman, Stein & Chesnoff, Las Vegas, Nev., John L. Hayob, Kevin E. Glynn, Niewald, Waldeck, Norris & Brown, Robert W. Cotter, Dysart, Taylor, Penner, Lay & Lewandowski, P.C., Thomas O. Baker, Baker & Sterchi, Kansas City Mo., Robert A. Calinoff, Calinoff & Katz, New York City, Jon-

**1454**

athan A. Margolies, McDowell, Rice & Smith, Max W. Foust, Foust, Strother & Frickleton, Duke W. Ponick, Jr., Ponick, Amick & Allen, Kansas City, Mo., James R. Bell, Murane & Bostwick, Casper, Wyo., for defendants.

Robert B. Best, Watson, Ess, Marshall & Enggas, Kansas City, Mo., pro se.

Laramie Ins. Co., Casper, Wyo., pro se.

Steven Hurley Mustoe, McDowell, Rice & Smith, Kansas City, Mo., for garnishee.

## ORDER GRANTING PARTIAL SUMMARY JUDGMENT AGAINST JAMES R. WINING, WILLIE A. SCHONACHER, JR., FIELDING REINSURANCE, LTD. AND KENSU HOLDINGS, INC.

BARTLETT, District Judge.

### I. Background

On April 3, 1986, Mutual of Omaha (Mutual) and The Omaha Indemnity Company (Omaha Indemnity) began this litigation against Royal American Managers, Inc. (RAM), James R. Wining (Wining), Willie A. Schonacher, Jr. (Schonacher), Fielding Reinsurance, Ltd. (Fielding), Kensu Holding, Inc. (Kensu) and other affiliated entities. Plaintiffs' claims arose from a managing general agency relationship between RAM and Omaha Indemnity in which RAM wrote reinsurance business in Omaha Indemnity's name. Claims for breach of contract, breach of fiduciary duty, negligence, fraudulent misrepresentation, prima facie tort, civil conspiracy and equitable relief were asserted.

On May 23, 1986, counsel for defendants moved to compel arbitration of all the claims against RAM and for a stay of all litigation against the defendants during the pendency of the arbitration proceeding asserting that "the claims against RAM and the claims against the Moving Defendants involve common fact issues which may be resolved in the arbitration." Memorandum in Support of Motion to Dismiss or, in the Alternative, to Stay Litigation at 27.

All claims against RAM in Omaha Indemnity's original Complaint were submitted to arbitration. On May 11, 1989, the arbitration panel returned an award of $225,000,000 in favor of Omaha Indemnity and against RAM. I confirmed this arbitration award and entered final judgment against RAM on July 7, 1989. RAM has paid nothing toward satisfaction of this judgment but Omaha Indemnity has been able to recover $5,000,000 from an errors and omissions insurer.

On November 17, 1989, plaintiffs filed a Third Amended Complaint. In Count V, plaintiffs assert that Wining and Schonacher are liable for the RAM arbitration judgment because they are privies of RAM and are bound by the judgment entered against RAM under principles of *res judicata*. In Count VI, plaintiffs assert that Wining, Schonacher, Fielding and Kensu, as well as others, aided and abetted breaches of fiduciary duty. Plaintiffs assert a conspiracy claim against RAM, Wining, Schonacher, Fielding, Kensu and other related entities in Count IX.

On April 13, 1990, plaintiffs moved for summary judgment against Wining and Schonacher on Count V of their Third Amended Complaint. On June 15, 1990, plaintiffs moved for summary judgment against Fielding and Kensu.

### II. Standard for Summary Judgment

■ Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, it is the court's obligation to view the facts in the light most favorable to the adverse party and to allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Inland Oil and Transport Co. v. United States*, 600 F.2d 725, 727–28 (8th Cir.), *cert. denied*, 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979).

■ If there is no genuine issue about any material fact, summary judgment is proper because it avoids needless and costly litigation and promotes judicial efficien-

cy. *Roberts v. Browning*, 610 F.2d 528, 531 (8th Cir.1979); *United States v. Porter*, 581 F.2d 698, 703 (8th Cir.1978). The summary judgment procedure is not a "disfavored procedural shortcut." Rather, it is "an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986); *see also City of Mt. Pleasant v. Associated Electric Cooperative, Inc.*, 838 F.2d 268, 273 (8th Cir.1988). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish that there is a genuine issue for trial about an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 106 S.Ct. at 2553.

■ The moving party bears the initial burden of demonstrating by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the *absence* of genuine issues of material fact. However, the moving party *is not required* to support its motion with affidavits or other similar materials *negating* the opponent's claim. *Id.* (emphasis added).

■ The nonmoving party is then required to go beyond the pleadings and by affidavits, depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id.* A party opposing a properly supported motion for summary judgment cannot simply rest on allegations and denials in his pleading to get to a jury without any significant probative evidence tending to support the complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■■ A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The evidence favoring the nonmoving party must be more than "merely colorable." *Id.* 106 S.Ct. at 2511. When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Ze-nith Radio*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (footnote omitted).

■ The inquiry to be made mirrors the standard for a directed verdict: whether the evidence presented by the party with the onus of proof is sufficient that a jury could properly proceed to return a verdict for that party. *Id.* Essentially, the question in ruling on a motion for summary judgment and on a motion for directed verdict is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 106 S.Ct. at 2512.

### III. Undisputed Facts

■ In a Scheduling Order dated February 24, 1990, I required the following procedure be used to determine if there are disputes of material fact in connection with the Motions for Summary Judgment.

a) In a separate section of its brief in support of its Motion for Summary Judgment, the moving party shall present a concise statement of material fact as to which the non-moving party contends no genuine issue exists. The facts should be numbered and referenced to those portions of the record upon which movant relies;

b) In a separate section of its brief in opposition, the non-moving party shall respond to each fact listed by movant by either agreeing the fact is undisputed, or by agreeing that the fact is undisputed for the purposes of ruling on movant's Motion for Summary Judgment only, or by stating that the fact is disputed. If any fact is disputed, the non-movant shall provide the reason for disputing the fact by designating a portion of an affidavit, declaration under penalty of perjury or relevant portion of depositions, answers to interrogatories or responses to requests for admissions.

Omaha Indemnity complied with the February 24, 1990, order by submitting a statement of material facts as to which it contends no genuine issue exists along with its

April 13, 1990, and June 15, 1990, Motions for Summary Judgment.

When Wining and Schonacher had not responded to the April 13, 1990, motion by May 16, 1990, I ordered them to file their opposition to plaintiffs' April 13, 1990, Motion for Partial Summary Judgment by July 2, 1990.

On July 18, 1990, when no response had been received to either the April 13, or June 15, 1990, motion, plaintiffs "respectively suggest[ed] for the reasons stated in its respective moving papers that the judgment sought in its motions of April 13, 1990, and June 15, 1990, should be granted and entered at this time as final judgments."

On July 19, 1990, Wining, Schonacher, Fielding and Kensu moved for leave to file, out of time, their suggestions opposing plaintiffs' summary judgment motions. On August 9, 1990, I granted these defendants leave to file, out of time, their suggestions opposing plaintiffs' summary judgment motions.

Defendants' suggestions opposing plaintiffs' two summary judgment motions do not comply with my February 24, 1990, order. Defendants do not respond to each fact previously listed by Omaha Indemnity. Instead, defendants state:

> The Arbitration Proceeding was not one where either Wining or Schonacher were [sic] present to defend their individual decisions or actions, although the Arbitration Record does disclose substantial defenses to the claims of plaintiff. To recite these issues in the defense of these parties would be too lengthy and repetitive of the Arbitration Record which is submitted in its entirety for this Court's Review from Vols. VIII, IX, X, XI of the Arbitration Hearing Transcripts in box 3 of Plaintiffs' Exhibit E to their Motion for Summary Judgment. It is incorporated herein by reference and in support of this Opposition to Plaintiff's Motion for Summary Judgment.

Defendants' Suggestions in Opposition at 3.

Also, the February 24, 1990, order required the non-moving party to provide the reason it disputed any material fact set forth by plaintiffs by designating factual support for its contention. In regard to this requirement, defendants merely suggest

> that those portions of arbitration transcripts contained in box 3 of plaintiffs' exhibits to their motion for summary judgment, and particularly Volume VIII, pages 1659–1688 (testimony of Karen Jorgenson), Volumes VIII and IX, pages 1718–1967 (testimony of James Wining), Volume X, pages 1984–2036, (testimony of Elizabeth Strahan), and Volume XI, pages 2136–2311, (testimony of Willie A. Schonacher, Jr.) sufficiently establish the appropriateness of the relief sought by plaintiffs and clearly set out defenses which are appropriate for a jury to consider during a trial of plaintiffs' Complaint.

Defendants' citation to the record does not comply with my order. Defendants cite to hundreds of transcript pages but provide absolutely no guidance as to what disputed facts they claim exist in the cited material. Moreover, defendants do not specify what defenses they might raise at trial based on any disputed facts that might be found. Defendants' abstract references to hundreds of pages of testimony and "defenses which are appropriate for a jury to consider" are insufficient to create disputes of material fact.

In addition, defendants' opposition to plaintiffs' summary judgment motions fails to comply with Rule 56(e), Federal Rules of Civil Procedure, which provides in part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts that there is a genuine issue for trial.

Defendants cannot shift to the court their burden of sifting through the voluminous record in this case to identify those facts, if any, that could create a dispute of material fact. The Fifth Circuit Court of Appeals has stated:

We wish to emphasize most strongly that it is foolhardy for counsel to rely on a court to find disputed issues of material fact not highlighted by counsel's paperwork.... [P]ractical constraints on the time of a judge make it impossible for the judge to examine a record of even moderate size with such finitude as to be both exhaustive and exhausting. Judges are not ferrets!

*Nicholas Acoustics, Etc. v. H & M Construction Company, Inc.*, 695 F.2d 839, 846–47 (5th Cir.1983).

In *Stepanischen v. Merchants Despatch Transportation Corp.*, 722 F.2d 922, 931 (1st Cir.1983), the court suggested that failure to follow a procedure for identifying facts in dispute could be the basis for judgment against the noncomplying party:

A district court might deal with the problem of the sprawling record by ordering the party moving for summary judgment to provide a list of undisputed facts, buttressed by appropriate record citations, that would entitle the moving party to summary judgment. The court could then order the opposing party to provide a counter-list of genuine, material factual issues, again with appropriate record citations, that would preclude summary judgment. And once so warned, a party's failure to comply would, where appropriate, be grounds for judgment against that party.

Other courts have held that when a nonmoving party fails to follow the designated procedure set forth in a court's local rules in responding to a movant's statement of undisputed facts, the facts presented by the movant may be deemed admitted. *See Bell, Boyd & Lloyd v. Tapy*, 896 F.2d 1101, 1102–03 (7th Cir.1990); *Jones v. Gerwens*, 874 F.2d 1534, 1537, n. 3 (11th Cir.1989); *Nilsson, Robbins, et al. v. Louisiana Hydrolec*, 854 F.2d 1538, 1545 (9th Cir.1988).

Rule 56(e) provides that if a non-moving party does not set forth specific facts showing that there is a genuine issue for trial, "summary judgment, if appropriate, shall be entered against the adverse party."

Because defendants' opposition complied with neither Rule 56(e) nor my February 24, 1990, order, plaintiffs' April 13, 1990, and June 15, 1990, statements of material facts are deemed admitted for purposes of ruling on their Motions for Summary Judgment.

IV. *Plaintiffs' Motion for Partial Summary Judgment Against Wining and Schonacher Will Be Granted*

In Count V of their Third Amended Complaint, plaintiffs assert that Wining and Schonacher are liable for the RAM arbitration judgment. In their April 13, 1990, Motion for Summary Judgment, plaintiffs argue that they are entitled to judgment as a matter of law on Count V on the alternative grounds that 1) as corporate officers of RAM, Wining and Schonacher knowingly participated in tortious conduct that caused Omaha Indemnity $225,000,000 in damages; and 2) RAM was the alter ego and instrumentality of Wining and Schonacher.

A. Wining and Schonacher Personally Are Liable for RAM's Tortious Conduct

The doctrine of collateral estoppel precludes the relitigation of issues which were determined in a prior proceeding. 1B J. Moore, *Moore's Federal Practice*, ¶¶ 0.401, 0.405[3] (2d Ed.1988). The doctrine of collateral estoppel requires that:

(1) the issue sought to be precluded is identical to the issue previously decided;

(2) the prior action resulted in a final adjudication on the merits;

(3) the party sought to be estopped was either a party or in privity with a party to the prior action; and

(4) the party sought to be estopped was given a full and fair opportunity to be heard on the issue in the prior action.

*City of Bismarck v. Toltz, King, Duvall, Anderson & Associates, Inc.*, 855 F.2d 580, 582 (8th Cir.1988).

An arbitration award may constitute a final judgment on the merits for purposes of collateral estoppel. *Wellons, Inc. v. T.E. Ibberson Co.*, 869 F.2d 1166, 1168 (8th Cir.1989) (citations omitted). The undisputed facts of this case show that Wining and Schonacher are in privity with RAM and were given a full and fair oppor-

tunity to be heard in the arbitration proceeding. *See* April 13, 1990, Statement of Material Facts, 1–9, 16–18. Because the issue of RAM's liability to Omaha Indemnity was decided in the arbitration proceeding, the doctrine of collateral estoppel precludes Wining and Schonacher from relitigating the existence and extent of RAM's liability.

In order for the doctrine of collateral estoppel to prevent Wining and Schonacher from having a jury determine whether they personally are liable to Omaha Indemnity, it must be shown that the arbitrators determined factual issues that create personal liability. The arbitrators did not set forth the basis for their decision but simply stated they "hereby AWARD as follows: Omaha Indemnity Company to receive $225,000,000 from Royal American Managers, Inc., which amount includes interest to date, attorney's fees and expenses of each party to be borne by the Party." Omaha Indemnity's June 7, 1989, Motion for Order Confirming Arbitration Award, Exhibit A.

■■■■ Where an arbitration award does not expressly state the reason for its decision, the award nevertheless precludes the relitigation of issues that a rational fact finder necessarily must have resolved in order to have reached the arbitration result. *Wellons, Inc.*, 869 F.2d at 1169–71. Based on the record before the arbitrators, the panel must have determined that Wining and Schonacher controlled all of RAM's significant business and financial activities, including the conduct upon which the arbitration panel based its award of $225,000,000 in damages. Thus, the panel necessarily determined that Wining and Schonacher knowingly participated in the conduct upon which RAM's liability was based. Accordingly, Wining and Schonacher are precluded from relitigating the issue of whether they actively participated in the conduct that caused $225,000,000 in damages to Omaha Indemnity.

■■■■ Officers of a corporation are individually liable for tortious corporate conduct in which they knowingly participate. *Honigmann v. Hunter Group, Inc.*, 733 S.W.2d 799, 807 (Mo.App.1987); *Osterberger v. Hites Const. Co.*, 599 S.W.2d 221, 229 (Mo.App.1980). Accordingly, Wining

and Schonacher are personally liable to Omaha Indemnity for the damages caused by RAM.

**B. Wining and Schonacher Also Are Liable Under an Alter Ego Theory for the Damages Omaha Indemnity Suffered**

■■■■ Although shareholders ordinarily are not liable for corporate obligations, when a corporation is the alter ego or instrumentality of its shareholders, a judgment against the corporation also establishes the personal liability of the shareholders. Missouri applies a two-part test in determining whether a corporation is the alter ego of its shareholders:

> [F]irst, the corporation must be controlled and influenced by persons or by another corporation; second, the evidence must establish that the corporate cloak was used as a subterfuge to defeat public convenience, to justify a wrong, or to perpetrate a fraud.

*Terre du Lac Association, Inc. v. Terre du Lac, Inc.*, 737 S.W.2d 206, 218 (Mo.App. 1987) (citation omitted).

The undisputed facts of this case conclusively show that Wining and Schonacher dominated and controlled RAM and used this control to perpetrate injustice and fraud. For example, RAM had virtually no risk capital at its inception. April 13, 1990, Statement of Undisputed Material Facts, Fact 11. Undercapitalization in relation to the nature and magnitude of corporate undertakings is a misuse of the corporate form that will justify disregarding the legal fiction of separate corporate existence. *Collet v. American National Stores, Inc.*, 708 S.W.2d 273, 286–87 (Mo.App.1986).

Also, Wining and Schonacher intermingled corporate and personal finances and participated in the systematic stripping of RAM's corporate assets. April 13, 1990, Statement of Undisputed Material Facts, Facts 24, 28–31, 33–36.

Accordingly, on this record, RAM was the alter ego of Wining and Schonacher. Therefore, Wining and Schonacher personally are liable for the judgment against RAM.

## V. Partial Summary Judgment Will Be Granted in Favor of Omaha Indemnity and Against Defendants Fielding and Kensu

In support of their Motion for Summary Judgment against Fielding and Kensu, plaintiffs argue 1) that Fielding and Kensu were the alter egos of Wining and Schonacher and should be jointly and severally liable on any judgment entered against them; and 2) that Fielding and Kensu aided and abetted RAM's breaches of fiduciary duty owed to Omaha Indemnity.

Under the alter ego doctrine, corporations whose formation and use do not meet the standard required for separate corporate existence can be held liable on judgments entered against their shareholders. *G.M. Leasing Corporation v. United States,* 514 F.2d 935, 939-40 (10th Cir. 1975), *aff'd in part, rev'd in part,* 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977) (corporation required to satisfy sole shareholder's tax liability where corporation was shareholder's alter ego); *Boatmens National Bank v. Smith,* 706 F.Supp. 30, 32 (N.D.Ill.1989) (where standards for piercing the corporate veil are met, corporation is liable on judgment against sole shareholder).

Wining and Schonacher controlled Fielding and Kensu. June 15, 1990, Statement of Undisputed Material Facts, Facts 1-6, 18-21. Wining and Schonacher used these entities to perpetrate injustice and fraud. *Id.,* Facts 7-17, 22-32. Under the two-part standard set forth in *Terre du Lac Association, Inc.,* 737 S.W.2d at 218, Fielding and Kensu are alter egos of Wining and Schonacher. Therefore, they are liable to Omaha Indemnity for the damages caused by Wining and Schonacher.

A federal court exercising diversity jurisdiction must apply the substantive law of the forum in which it sits. *Erie Railroad Company v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In a case involving the application of Missouri substantive law, a New York district court found it appropriate to use the formulation of civil aider and abettor liability found in the Restatement (Second) of Torts § 876 (1982). *Terrydale Liquidating Trust v.*

*Barness,* 611 F.Supp. 1006, 1015-16 (S.D.N.Y.1984). At the same time, the court noted that "Missouri courts have apparently not expressly adopted the Restatement formulation of civil aider and abettor liability...." *Id.* at 1015. The Eighth Circuit Court of Appeals has stated that:

[W]here direct expression by an authorized state tribunal is lacking, it is the duty of the federal court, in dealing with matters of either common law or statute, to have regard for any persuasive data that is available, such as compelling inferences from other related adjudications and considered pronouncements. The responsibility of the federal courts, in matters of local law, is not to formulate the legal mind of the state, but merely to ascertain and apply it.

*Yoder v. Nu-Enamel Corporation,* 117 F.2d 488, 489 (8th Cir.1941).

Plaintiffs' citation of one New York district court opinion does not convince me that Missouri courts would recognize a cause of action for aiding and abetting a breach of fiduciary duty. Accordingly, summary judgment will not be granted against Fielding and Kensu under this theory.

## VI. Conclusion

For the foregoing reasons, for the reasons set forth in plaintiffs' April 13, 1990, and June 15, 1990, Suggestions in Support of Motions for Summary Judgment and for the reasons set forth in plaintiffs' July 27, 1990, Reply Suggestions, it is hereby ORDERED that:

1) summary judgment is granted on Count V of plaintiffs' Third Amended Complaint against Wining and Schonacher in the amount of $220,000,000 plus interest as provided by law; and

2) summary judgment is granted against Fielding and Kensu, under an alter ego theory, on Count V of plaintiffs' Third Amended Complaint in the amount of $220,000,000 plus interest as provided by law.