**Matthew D. VACCA, Appellant,**

v.

**VIACOM BROADCASTING OF MISSOURI, INC. and CBS, Inc., Appellees.**

**No. 88–2244EM.**

United States Court of Appeals, Eighth Circuit.

Argued April 13, 1989.

Decided May 26, 1989.

Michael Izsak, St. Louis, Mo., for appellant.

John J. Gazzoli, Jr., St. Louis, Mo., for appellees.

Before FAGG, ROSS and TIMBERS,* Circuit Judges.

TIMBERS, Circuit Judge:

Appellant Matthew D. Vacca appeals from a summary judgment entered July 15, 1988 in the Eastern District of Missouri, Eastern Division, Clyde S. Cahill, *District Judge,* in favor of appellees Viacom Broadcasting of Missouri, Inc. (Viacom) and CBS, Inc. (CBS). Appellant commenced the instant action against appellees for wrongful discharge and for breach of an alleged contract (side agreement) separate from the collective bargaining agreement between appellant's union and appellees (contract claim). Under the alleged side agreement, appellant claims that appellees agreed to pay a portion of his law school tuition in return for which appellant agreed to accept a certain job assignment.

The parties submitted the wrongful discharge claim to arbitration pursuant to the collective bargaining agreement. The arbitrator decided the wrongful discharge claim in favor of appellees. The district court thereafter granted summary judgment in favor of appellees on the contract

* Of the Second Circuit, sitting by designation.

claim on the ground that the decision of the arbitrator left "no genuine issue as to any material fact" on that claim.

Appellant claims on appeal that the district court erred in granting summary judgment because the contract claim was separate and distinct from the wrongful discharge claim, it never was submitted to arbitration, and therefore it was not decided by the arbitrator. Appellant also claims that there remain genuine issues of material fact concerning the contract claim that made summary judgment inappropriate.

We affirm.

## I.

We shall summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.

In the Fall of 1983, appellant had planned to attend law school at St. Louis University. A problem arose, however, which prevented him from starting law school at that time. He then decided to take a temporary job as a researcher in the news department of KMOX–TV[1] or Channel 4 (Channel 4), a St. Louis television station then owned by CBS. Appellant planned to work at Channel 4 until he began law school in the Fall of 1984. In May 1984, impressed with appellant's performance, Channel 4 offered him a permanent full-time position as a writer/editor. He accepted the position but informed Channel 4 that he would work only until the Fall, when he would resign to start law school.

At that time Fred Burrows (Burrows), Channel 4's news director, was having difficulty filling the job of Weekend Assignment Editor, which was an unpopular position because it required working long weekend hours. Burrows suggested to appellant that if he took the position of Weekend Assignment Editor he could work full-time and attend law school part-time. Burrows also stated that CBS might pay for appellant's law school tuition through its tuition assistance program (TAP).

Appellant agreed to accept the position of Weekend Assignment Editor in exchange for some sort of tuition assistance, but the exact contours of this alleged side agreement are in dispute. Appellees deny that there was any side agreement. CBS asserts that its TAP ordinarily did not pay for law school tuition, but in appellant's case CBS agreed that it would pay under its TAP 75% of the tuition of any law school course it felt was job-related. Appellant, however, claims that CBS agreed to pay 75% of his entire law school tuition under a separate side agreement independent of the TAP and the collective bargaining agreement between CBS and appellant's union, the Writers Guild of America (WGA).

Appellant admits that he used CBS TAP forms to obtain his tuition assistance, but he claims that the TAP essentially was a conduit through which he received funds under the alleged side agreement. He claims that, when he received a notice from CBS stating that under his CBS TAP arrangement CBS would pay only 75% of the tuition for job-related law school courses, Burrows told him not to worry about it because the notice was just "paperwork". Whatever the nature of the arrangement, appellant worked at Channel 4 for the next two years while completing one-third of his law school course of study. During this period, CBS paid 75% of the tuition for every law school course appellant completed.

In May 1986, Viacom took control of Channel 4 after purchasing the station from CBS. Appellant then inquired whether Viacom would continue to pay his law school tuition under the separate side agreement he claimed he had with CBS. The new Channel 4 news director, Alan Holzer (Holzer), informed appellant that Viacom would pay his tuition only under the terms of the Viacom TAP, which Viacom considered more advantageous to appellant.[2] On May 20, 1986, appellant confront-

---

1. The station became KMOV–TV after its sale to Viacom.

2. The parties dispute whether the Viacom TAP was superior to appellant's arrangement with CBS. The Viacom TAP paid 100% of a course's

ed Holzer and threatened to sue Viacom unless it paid his law school tuition in the same manner as CBS did. Holzer refused to commit Viacom to any such arrangement. Appellant then refused to do any work. Holzer fired him for insubordination.

Appellant commenced the instant action for wrongful discharge and breach of contract in the St. Louis City Circuit Court. Appellees removed the case to the District Court for the Eastern District of Missouri on the ground that, if appellant's claims stated a cause of action at all, they came within § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185 (1982), in that the claims asserted an alleged breach of the collective bargaining agreement between appellees and the WGA (WGA contract).

The parties submitted the wrongful discharge claim to arbitration under the WGA contract. The arbitrator found in favor of appellees. He held that the WGA contract permitted Viacom to discharge appellant because his refusal to work constituted insubordination under the WGA contract. The district court then granted appellees' motion for summary judgment on the contract claim as stated above. This appeal followed.

## II.

We start with some basic summary judgment rules that are beyond dispute. A party is entitled to summary judgment only if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law". Fed.R.Civ.P. 56(c). Summary judgment "should not be granted unless the moving party has established the right to a judgment with such clarity as to leave no room for controversy". *Snell v. United States*, 680 F.2d 545, 547 (8th Cir.), *cert. denied*, 459 U.S. 989 (1982). "[T]he evidence is viewed in the light most favorable to the nonmoving party", and the nonmoving party enjoys "the benefit of all reasonable

inferences to be drawn from the facts". *Id.* (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). Nevertheless, "the mere existence of *some* alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment" if there is "no *genuine* issue of *material* fact". *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). "[T]his Circuit recognizes the remedy's salutary purpose of avoiding useless and time consuming trials." *Butler v. MFA Life Ins. Co.*, 591 F.2d 448, 451 (8th Cir.1979).

Appellant asserts that the district court erred in granting summary judgment on the contract claim because that claim was separate and distinct from the wrongful discharge claim and was not before the arbitrator. He asserts that the district court "labored under the false impression that the entire dispute between the parties had been submitted [by him] to an arbitrator". Since in his view the contract claim was not submitted to arbitration, appellant contends that the contract claim "was in no way determined by the decision of the Arbitrator". Appellant asserts that the arbitrator himself was well aware that he was not deciding the contract claim, since in his opinion on the wrongful discharge claim he stated that "the remainder of the suit [i.e. the contract claim] is still pending".

■ We do not believe, however, that the district court was under the erroneous impression that the contract claim had been submitted to arbitration. Rather, we agree with the district court that a crucial issue concerning the contract claim as framed by appellant in his amended complaint—namely, the reason for appellant's discharge by Viacom—was determined by the arbitrator. It follows that we are bound by this finding of fact under the doctrine of collateral estoppel. This finding supports the conclusion that appellees are entitled to judgment as a matter of law.

---

tuition, but it did so only after successful completion of the course. CBS paid 75% of appellant's tuition in advance. Appellant found un-

satisfactory Viacom's practice of reimbursing TAP participants after completion of a course.

Appellant alleges in his amended complaint that under the asserted side agreement CBS agreed to pay 75% of appellant's law school tuition until he completed law school, and that Viacom assumed CBS' obligation under the agreement. Appellant also alleges that in return he agreed to accept employment as Weekend Assignment Editor, "committ[ing] himself to work each and every Saturday and Sunday" until he completed law school. Accepting as true appellant's allegations that CBS bargained for appellant's performance as Weekend Assignment Editor during appellant's entire law school career, Viacom was entitled to such performance if it ratified the agreement.

Appellant does not allege nor does he offer any evidence tending to show that under the side agreement he could not be fired for insubordination, or that he would be entitled to tuition assistance even after his valid termination for insubordination under the WGA contract. Thus, if appellant were fired for a valid reason under the WGA contract, Viacom would be entitled to judgment as a matter of law on the contract claim because appellant's valid firing would cause a failure of consideration, depriving Viacom of what had been bargained for by CBS—appellant's performance as Weekend Assignment Editor. A party to a contract "may be discharged by his failure to receive the agreed equivalent for which his promised performance was to be exchanged". 6 Corbin on Contracts § 1255 (1962); Restatement (Second) of Contracts § 237 (1981) ("[I]t is a condition of each party's remaining duties to render performances to be exchanged under an exchange of promises that there be no uncured material failure by the other party to render any such performance due at an earlier time.").

Thus, the reason for appellant's firing becomes critical. If his firing by Viacom was valid, then a failure of consideration occurred under the alleged side agreement which discharged Viacom from its obligation under the side agreement. Appel-

lant, however, alleges in paragraph 8 of his amended complaint that

"Defendant Viacom discharged Plaintiff for the purpose of depriving him of tuition reimbursement under the contract of employment which he previously entered into with Defendant CBS, Defendant Viacom's predessor [sic] in interest".

This is the only reason appellant alleges in his amended complaint for his firing.[3] Clearly, if this allegation were true and if appellant had established the existence of a valid and enforceable contract, he would be entitled to damages for its breach. The arbitrator, however, was "firmly persuaded that [appellant] was discharged for refusing to work". He held that the discharge was permitted under the WGA contract. We believe that the district court was bound by this finding of fact. It was this finding that entitled appellees to summary judgment.

The district court held, under *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29 (1987), that it was bound by the arbitrator's finding. The court cited *Misco* for the proposition that a district court may not reject findings of fact made by an arbitrator "simply because it disagrees with them". *Id.*, 484 U.S. at 38. We believe that *Misco* is distinguishable from the instant case, however, since *Misco* involved an action to vacate an arbitrator's award, the action having been commenced by the party that lost the arbitration. The instant case does not involve a challenge to the arbitrator's decision; rather, it is a separate action which admittedly involves many facts in common with the issue submitted to arbitration.

Nevertheless, we agree with appellees that the doctrine of collateral estoppel requires us to accept the arbitrator's finding concerning the reason for appellant's discharge. Findings of an arbitrator will bind a court under the doctrine of collateral estoppel when

---

**3.** At the arbitration of his wrongful discharge claim, appellant's sole claim was that he was fired for threatening to sue Viacom for breach of the alleged side agreement. The arbitrator, however, carefully considered and rejected this claim.

"(1) the issue is identical to one in the prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party ... to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue".

*City of Bismarck v. Toltz, King, Duvall, Anderson and Assocs., Inc.*, 855 F.2d 580, 582 (8th Cir.1988).

These requirements clearly were met in the instant case. First, the issue of the cause of appellant's discharge, of course, was the subject of the arbitration of the wrongful discharge claim. Second, "an arbitration award may constitute a final judgment for the purposes of collateral estoppel". *Wellons, Inc. v. T.E. Ibberson Co.*, 869 F.2d 1166 (8th Cir.1989); *City of Bismarck, supra*, 855 F.2d at 582. Third, appellant was a party to the earlier arbitration. Fourth, appellant had a full and fair opportunity to litigate the issue of the cause of his firing. The arbitrator carefully considered the testimony and credibility of both appellant and Holzer, as well as the testimony of two other witnesses to part of the incident for which appellant was discharged. The arbitrator stated that, except for appellant's testimony that he was fired for threatening to sue Viacom, he offered no other evidence as to why he was fired. Appellant had a strong incentive to present evidence supporting the theory he alleges in the instant case as the cause of his firing—appellees' desire to escape liability for the remainder of appellant's law school tuition—because if he had proved that at arbitration, he certainly would have established a wrongful discharge under the WGA contract.

Since the elements of collateral estoppel were established, the district court was bound by the arbitrator's finding that appellant was validly fired under the WGA contract for his refusal to work. This finding supported the conclusion that appellees were entitled to judgment as a matter of law. Since appellees bargained for appellant's performance as Weekend Assignment Editor, his valid firing by Viacom for refusing to work constituted a failure of consideration which discharged Viacom from any further performance under the asserted side agreement. Following the discharge under the side agreement, neither Viacom nor CBS, its predecessor in interest, was obligated to pay appellant's future law school tuition. Although under the side agreement, according to appellant's allegation, appellees probably would have been obligated to pay appellant for 75% of any tuition paid prior to his termination for which he had not yet been reimbursed, appellant admits that CBS paid him for every course he took prior to his discharge. Accordingly, appellant has received everything to which he alleged he was entitled under the terms of the side agreement.

We hold that the district court properly granted summary judgment, since the arbitrator's finding that appellant was fired for insubordination was binding on the court and entitled appellees to judgment as a matter of law.

### III.

■ We also affirm the district court's judgment on the alternative ground that the contract claim is preempted by § 301 of the LMRA (§ 301). This statute, in § 301(a), provides in pertinent part that

"Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties".

Section 301 expresses a congressional policy that federal labor law should govern § 301 disputes. It is a mandate to the federal courts to establish a federal common law to govern disputes arising out of labor contracts. *Lingle v. Norge Div. of Magic Chef, Inc.*, 108 S.Ct. 1877, 1880 (1988); *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985); *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 456 (1957). Accordingly, in an action alleging a

violation of a term of a labor contract, federal labor law preempts any local law purporting to define the meaning or delineate the scope of a labor contract provision. This assures uniformity of interpretation of collective bargaining agreements and promotes harmonious and consistent resolution of labor contract disputes. *Lingle, supra,* 108 S.Ct. at 1880; *Lueck,* 471 U.S. at 209–10; *Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 103–04 (1962).

The preemptive effect of § 301, however, extends beyond actions which allege violations of labor contracts. The interests that require the application of a uniform and predictable federal common law to labor contract disputes also require that uniform federal labor law be applied in all actions—even those beyond labor contract disputes—where resolution of the action requires interpretation of a collective bargaining agreement. *Lingle, supra,* 108 S.Ct. at 1881; *Lueck, supra,* 471 U.S. at 210–13.

This does not mean that all actions commenced against an employer by an employee covered under a labor contract must be brought under § 301. Such an employee may assert a state law claim against his employer if resolution of that claim does not require interpretation of the terms of the union contract. *Lingle, supra,* 108 S.Ct. at 1883; *Lueck,* 471 U.S. at 211–12. If resolution of the claim, however, is "substantially dependent" on the terms of the union contract, or if evaluation of the state law claim is "inextricably intertwined with consideration of the terms of the labor contract", it is preempted by § 301. *Id.* at 213, 220–21. The complete factual background of the case must be examined against all elements of the state law claim, including defenses, to determine whether the terms of the union contract "come into play". *Hanks v. General Motors Corp.,* 859 F.2d 67, 70 (8th Cir.1988); *see also Anderson v. Ford Motor Co.,* 803 F.2d 953, 956–57 (8th Cir.1986), *cert. denied,* 483 U.S. 1011 (1987); *Hillard v. Dobelman,* 774 F.2d 886, 887 (8th Cir.1985) (per curiam).

Appellant claims that, since his asserted side agreement is separate and distinct from the WGA contract, no analysis of the WGA contract is required to resolve the state law breach of contract claim and therefore § 301 does not preempt his state law claim. The analysis set forth in *Hanks,* however, indicates that the WGA contract "comes into play" and appellant's contract claim is preempted.

Under Missouri law, among the elements that appellant must establish to prevail in a breach of contract action is an agreement between parties *capable of contracting. Berra v. Papin Builders, Inc.,* 706 S.W.2d 70, 73 (Mo.Ct.App.1986). As appellees point out, however, it is not clear that the parties were permitted under the terms of the WGA contract to enter into the asserted side agreement. Under the WGA contract the parties were permitted to enter into a side agreement only if the terms of the side agreement were more favorable than the rights granted appellant under the WGA contract.

Resolution of this issue requires interpretation of the WGA contract. First, the determination whether the asserted side agreement was more favorable than appellant's rights under the WGA contract would require a comparison between the terms of the side agreement and the terms of the CBS TAP—the tuition assistance that would have been provided appellant under the WGA contract. The ground rules for such a comparison would have to be determined from an interpretation under federal labor law of the clause of the WGA contract permitting more favorable agreements.

Second, interpretation of the CBS TAP itself may involve interpretation of the WGA contract, since it appears that the CBS TAP may have been a part of the WGA contract. The WGA contract stated that "[e]mployees shall be eligible for [the CBS TAP], subject to the terms and conditions of said plan". If this language incorporates the terms of the CBS TAP into the WGA contract, then interpretation of the

CBS TAP constitutes interpretation of the WGA contract. If nothing else, the determination of whether the CBS TAP was part of the WGA contract requires interpretation under federal labor law of the effect of the section of the WGA contract granting Channel 4 employees the right to participate in the CBS TAP.

It is clear therefore that resolution of appellant's contract claim is "inextricably intertwined" with interpretation of the WGA contract. The claim should have been treated as a § 301 claim and should have been dismissed as preempted by federal labor law or dismissed for failure to resort to the contractual grievance procedures to resolve the contract claim. *Lueck, supra,* 471 U.S. at 220–21; *see also De-Lapp v. Continental Can Co.,* 868 F.2d 1073, 1075–76 (9th Cir.1989).

Indeed, we believe that a further policy aim set forth in *Lueck*—that of protecting and encouraging labor arbitration—requires that result here. Among the concerns of the Supreme Court in *Lueck* was that employees would try to bypass arbitration by recasting disputes with employers as state law claims and assert such claims in state or federal court. *Id.* at 219–20. Widespread use of such a device "would cause arbitration to lose most of its effectiveness". *Id.* at 220. Although *Lueck* involved a tort claim, we believe that the Court's concerns are equally if not more applicable to the contract claim in the instant case. An employee should not be permitted to avoid arbitration by recasting a routine employment dispute as a state common law contract claim involving an alleged oral contract separate and distinct from the collective bargaining agreement. Appellant's contract claim is just the sort of dispute that should have been submitted to arbitration along with his wrongful discharge claim.

4. The parties raise numerous other questions as to whether the side agreement is a valid and enforceable contract under Missouri law. In

We hold that appellant's contract claim was preempted by § 301 of the LMRA and should have been dismissed.[4]

### IV.

To summarize:

We hold that the district court was bound by the doctrine of collateral estoppel to accept the arbitrator's determination that Viacom fired appellant for insubordination, and that this determination entitled appellees to judgment on the contract claim as a matter of law. We also hold that appellant's contract claim should have been dismissed as preempted by § 301 of the LMRA.

Affirmed.

view of our holding above, we need not reach those questions.