**UNITED STATES of America, Plaintiff,**

v.

**Joseph A. ZANGER, et al., Defendants.**

**No. C 89 20624 JW.**

United States District Court,
N.D. California.

May 21, 1991.

James A. Coda, Asst. U.S. Atty., San Francisco, Cal., for plaintiff.

Faber L. Johnston, Saratoga, Cal., for defendants.

### ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

WARE, District Judge.

## I. INTRODUCTION

This is an action brought by the United States on behalf of the U.S. Army Corps of Engineers ("Corps") against Joseph A. Zanger, individually and doing business as Casa De Fruta, seeking injunctive and civil penalties for violations of the Clean Water

Act, 33 U.S.C. § 1251 et seq. Specifically, defendants are charged with violation of 33 U.S.C. § 1311(a), discharging dredged or fill material into "navigable waters" without a permit issued by the Corps.

Plaintiff and defendants cross-move for summary judgment. Good cause appearing therefor, plaintiff's motion for summary judgment is granted, and defendants' motion for summary judgment is denied. The Court will hold a further hearing to consider the appropriate penalty.

## II. FACTUAL BACKGROUND

Defendants own property located on the east side of State Highway 152 about 13 miles east of Gilroy, in Santa Clara County, California. Defendants operate a business on the property called "Casa de Fruta."

Pacheco Creek flows through defendants' property for several thousand feet and then, as defendants' land ownership becomes narrower, the Creek flows along the eastern boundary of their property and separates it from the adjoining property to the east, the Cribari property. Declaration of John H. Eft, ¶ 2, attached to Plaintiff's Summary Judgment Motion ("Eft Decl.").

Pacheco Creek is an intermittent stream. Given adequate rainfall, Pacheco Creek runs into San Felipe Lake and, when the lake fills, Pacheco Creek flows into the Pajaro River. The Pajaro River empties into the Pacific Ocean at Monterey Bay. Declaration of Jerry J. Smith, ¶ 6, attached to Plaintiff's Summary Judgment Motion ("Smith Decl.").

Steelhead trout, which live as adults in the Pacific Ocean, migrate from the Pacific Ocean up the Pajaro River and then up Pacheco Creek, to and beyond Casa de Fruta, to spawn. Juvenile steelhead spend their first year in the creek and then migrate out to the ocean. The Pacheco Creek watershed has also supported some commercial fishing. Carp and blackfish have been fished for commercially in San Felipe Lake on Pacheco Creek, a few miles upstream from where Pacheco Creek joins the Pajaro River. Smith Decl., ¶¶ 5, 6, 7, 10.

In April 1982, defendants purchased approximately 79 acres of land from the landowner immediately to the north. Pacheco Creek runs through that parcel. In 1980 or 1981, prior to the acquisition of the 79 acre parcel, defendants began to modify the creek on that parcel. Declaration of Joseph Zanger, at 34–36. Defendants continued to modify this portion of the creek up to the time that the instant complaint was filed. *See, generally*, Eft Decl. Defendants have substantially changed a 2,100 foot section of the creek from a wide, meandering watercourse where the creek bed measured 800 feet at its widest point, to a trapezoidal channel or trench of an almost uniform width of 160 feet, and they have filled in the former creek bed outside the man-made channel to the extent that eight of the original 14 acres of the creek bed in this section are filled. Declaration of Joan Florsheim, ¶ 4, attached to Plaintiff's Summary Judgment Motion. The former creek bed is used for ball fields, parking and other improvements at Casa de Fruta. Eft Decl., ¶ 3. Defendants do not contest that they changed the course of the waterway, but rather contend that they were merely "putting the channel flowline substantially back into its former historical location to eliminate a nasty recurring flooding problem." Defendants' Memorandum in Support of Summary Judgment at 2. Further, defendants state that it is immaterial under 33 U.S.C. § 1311(a) "what the resultant configuration of a flood control project ends up at. The issue is whether in the process a *pollutant is discharged into waters of the United States ....*" Defendants' Supplement to Response to United States' Summary Judgment Motion at 2.

Defendants never obtained a work permit from the Army Corps of Engineers. When the Corps learned in 1983 that defendants had performed unauthorized work, it issued a Cease and Desist Order. It issued a second Order in 1986 after discovering more recent work. Eft Decl., ¶¶ 3, 4, 6, 10. Defendants admit that they had no permit from the Corps, but allege that no permit was required because: (1) they did not discharge a pollutant; (2) the work was exempt under the Code; and (3) a pre-existing

general permit from the Corps authorized their work at all times.

## III. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper when the pleadings and discovery, read in the light most favorable to the non-moving party, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Id.; see Allstate Ins. Co. v. Gilbert*, 852 F.2d 449, 451 (9th Cir.1988).

In a motion for summary judgment, "[i]f the party moving for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrates the absence of any genuine issues of material fact," the burden of production then shifts so that "the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *T.W. Electrical Service, Inc. v. Pacific Elec. Contractors*, 809 F.2d 626, 630 (9th Cir. 1987), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The opposing party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. Mere disagreement or the bald assertion that there is a genuine issue of material fact is not enough to defeat a summary judgment motion. *Id.*

## IV. THE CROSS–MOTIONS FOR SUMMARY JUDGMENT

■ The Clean Water Act ("Act") prohibits the discharge of any dredged or fill material into "navigable waters" unless authorized by a permit issued by the Corps pursuant to § 404 of the Act, 33 U.S.C. § 1344. Plaintiff argues that Pacheco Creek constitutes "waters of the United States," and that defendants discharged fill into Pacheco Creek without a § 404 permit. To establish a violation, the United States need only show (a) that it has jurisdiction over the subject waters, (b) that the defendants discharged or placed fill in those waters, and (c) that the defendants did so without a permit from the Corps.

Defendants argue that summary judgment should be granted in their favor, because they did not violate §§ 301 and 404 of the Clean Water Act, 33 U.S.C. §§ 1311 and 1344. Their first argument is that § 301 prohibits the discharge of a "pollutant" and they have not discharged any "pollutant." Their second argument is that even if they have discharge a "pollutant," their work fell within an exception under § 404(f) of the Act, or within one of the exceptions under the Corps' regulations. Their third argument is that a preexisting general permit from the Corps authorized their work at all times.

### A. *The United States Has Jurisdiction of Pacheco Creek Under the Clean Water Act*

■ Section 301 of the Clean Water Act, 33 U.S.C. § 1311, provides that the discharge of any pollutant by any person shall be unlawful, except in compliance with § 404 of the Act, 33 U.S.C. § 1344, and other sections. Section 404(a) provides that the Secretary of the Army may issue permits for the discharge of dredged or fill material into the "navigable waters" at specified disposal sites. The term "navigable waters" is defined in § 502 of the Act, 33 U.S.C. § 1362, as "waters of the United States, including the territorial seas." *See United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 123, 106 S.Ct. 455, 457, 88 L.Ed.2d 419 (1985). Congress intended that the term "waters of the United States" be interpreted as broadly as constitutionally possible under the commerce clause. *See, Leslie Salt Co. v. Froehlke*, 578 F.2d 742, 753–55 (9th Cir. 1978); *United States v. Holland*, 373 F.Supp. 665 (M.D.Fla.1974). The Corps promulgated regulations which defined the term "waters of the United States" broadly. 33 C.F.R. § 328.3.

■ Pacheco Creek is undoubtedly one of the "waters of the United States." Pa-

checo Creek and the Pajaro River fall within the scope of 33 C.F.R. § 328.3(a)(3) in that their "use, degradation or destruction" could affect interstate commerce in that they (i) are used or could be used by interstate or foreign travelers for "recreational" purposes (e.g., fishing, bathing, drinking) and (ii) fish "are or could be taken and sold in interstate or foreign commerce" from either of them. Steelhead trout can be taken from the creek, and commercial fishing has occurred on the creek. Smith Decl., ¶¶ 5, 6. Although Pacheco Creek is a "water of the United States" in its own right, it is also a tributary of other "waters of the United States," and thus covered under the regulations. 33 C.F.R. § 328.3(a)(5). Pacheco Creek is a tributary of the Pajaro River, and both the creek and the river are tributary to Monterey Bay and the Pacific Ocean.

Defendants have not argued that Pacheco Creek is not one of the "waters of the United States."

### B. Defendants Discharged Fill Material in Pacheco Creek

■ Section 301 of the Clean Water Act, 33 U.S.C. § 1311, provides that the discharge of any pollutant by any person shall be unlawful, except in compliance with § 404 of the Act, 33 U.S.C. § 1344, and other sections.

Section 301(a), 33 U.S.C. § 1311(a) [the statute under which defendants are charged], provides as follows:

Except as in compliance with this section and sections 1312, 1316, 1317, 1328, 1342, and *1344* of this title, the discharge of any pollutant by any person shall be unlawful. (Emphasis added.)

Section 404(a), 33 U.S.C. § 1344, provides, in pertinent part, as follows:

The Secretary may issue permits, after notice and opportunity for public hearing, for the discharge of dredged or *fill* material into the navigable waters at specified disposal sites. (Emphasis added.)

The terms "fill material" and "discharge of fill material" are defined in the Corps' regulations at 33 C.F.R. § 323.2, in pertinent part, as follows:

(e) The term "fill material" means any material used for the primary purpose of replacing an aquatic area with dry land or of changing the bottom elevation of a waterbody....

(f) The term "discharge of fill material" means the addition of fill material into waters of the United States. The term generally includes, without limitation, the following activities: ... site development fills for recreational, industrial, commercial, residential, and other uses; ... property protection and/or reclamation devices such as riprap, groins, seawalls, breakwaters, and revetments....

Defendants discharged fill material into Pacheco Creek, one of the "waters of the United States." Defendants do not deny discharging fill into the Creek. *See* Zanger Decl. at 34–42 (Zanger straightened the meandering nature of the creek by constructing a straight channel down the middle of the former creek bed). The fill was placed in the Creek both to protect Zanger's property, and to develop recreational and commercial uses. Eft Decl., ¶¶ 3, 6, 13. Defendants discharged eight acres of fill into the Creek. Declaration of Joan Florsheim, ¶ 4; *see also* Ambacher Decl., and aerial photographs attached thereto.

Defendants do not deny that they substantially modified the creek by channelizing it and moving creek bed material such as sand and gravel around within the creek to raise the creek bed outside of the new channel. Instead, defendants argues that "fill" is not a "pollutant" as that term is used in 33 U.S.C. § 1311(a), and thus they did not violate the Clean Water Act. They argue that "fill" does not even appear in § 301, 33 U.S.C. § 1311, and a "pollutant" must be something imported into the creek bed from some off-site source. Sections 301 and 404 must be read together, and defendants' arguments ignore § 404.

Clearly, the filling in and grading or changing of the bottom elevations of Pacheco Creek constituted the "discharge of a pollutant" under § 301 of the Act and the discharge of "fill" under the Corps regula-

tions, 33 C.F.R. § 323.2, and it required a permit. *See Avoyelles Sportsmen's League v. Marsh*, 715 F.2d 897, 922 (5th Cir.1983).

### C. *Defendants' "Creek Work" Was Not Exempt Under the Act and The Regulations*

Defendants argue that their discharge of fill ("creek work," as they call it) falls within one of the exceptions under § 404(f) and/or within one of the exceptions under the Corps' regulations. The pertinent language in subsection (f) is as follows:

(1) Except as provided in paragraph (2) of this subsection, the discharge of dredged or fill material—

(A) from normal farming, silviculture, and ranching activities such as plowing, seeding, cultivating, minor drainage, harvesting for the production of food, fiber, and forest products, or *upland soil and water conservation practices;*

(B) for the purpose of *maintenance,* including emergency reconstruction of recently damaged parts, of currently serviceable structures ... is not prohibited.

(2) Any discharge of dredged or fill material into the navigable waters incidental to any activity having as its purpose bringing an area of the navigable waters into a use to which it was not previously subject, where the flow or circulation of navigable waters may be impaired or the reach of such waters be reduced, shall be required to have a permit under this section. [Emphasis added.]

■ Defendants first argue that their activities are "upland soil and water conservation practices" under subparagraph (1)(A). Plaintiff argues that the exemption is subparagraph (1)(A) is "limited to farming and ranching, whereas Casa de Fruta is a tourist complex." Plaintiff's Memo. in Opposition to Defendants' Motion for Summary Judgment at 10. Defendants, however, read (1)(A) not as limited to "normal" farming, silviculture and ranching activities, but "as an alternative to the normal farming and ranching activities therein

enumerated." Defendants' Reply Brief at 13–14. Alternatively, defendants argue that it is "reasonable, under normal farming and ranching activities, to utilize flood protection work in upland soil and water conservation practices." *Id.* at 14.

■ Defendants also argue that they come within the "maintenance" exemption under § 404(f). This exemption is unavailing, because it is limited to the "maintenance" of certain "structures." There were no structures in the creek when defendants did their filling, and even if there had been, defendants' filling goes far beyond any reasonable definition of maintenance or repair. *See, e.g.,* Ambacher Decl., and aerial surveys attached thereto.

■ Defendants next argument is that the Corps' regulations exempt "non-tidal streams" from the permit requirement. 33 C.F.R. § 323.4–2(a)(1) exempts from the permit requirement discharges into "non-tidal rivers, streams and their impoundments, including adjacent wetlands that are *located above the headwaters.*" Defendants focus on the fact that the stream is a "non-tidal stream." The key language is the regulation is not the phrase "non-tidal," but rather the phrase "located above the headwaters." "Headwaters" is defined as "the point on a non-tidal stream above which the average annual flow is less than five cubic feet per second." 33 C.F.R. § 330.2(b). The average annual flow on Pacheco Creek in the area of Casa de Fruta is well in excess of that figure. Declaration of Robert Coats, attached to Plaintiff's Memo. in Opp. to Defendants' Motion for Summary Judgment.

Neither the Code nor the Corps' regulations exempt defendants from obtaining a permit.

### D. *Defendants Had No Permit*

■ Defendants never obtained a permit for their fill activities in Pacheco Creek. Eft Decl., ¶ 20. Defendants claim that their work was already permitted by a pre-existing regional permit from the Corps. Plaintiff acknowledges that the Corps' regional permit authorizes "stream bank ero-

sion repair" if it is also authorized by a Santa Clara Valley Water District permit. Although defendants constantly assert that all they were doing was "stream bank erosion repair," the evidence shows that defendants did not limit themselves to repairing existing stream banks where erosion occurred.

### E. *Conclusion*

Defendants violated the Clean Water Act because they discharged fill into Pacheco Creek without the requisite permit from the Army Corps of Engineers. Plaintiff's motion for summary judgment is granted, and defendants' motion for summary judgment is denied.

## V. PENALTY PHASE

The United States is seeking injunctive relief against defendants, prohibiting them from further filling and/or channelizing of the creek and an injunction to require defendants to restore the site to its previous condition. The United States also seeks civil fines.

The Court will hold a separate hearing on the question of the appropriate penalty on July 18, 1991, at 1:30 p.m. The government's opening brief on the penalty issue is to be filed with the Court on or before June 14, 1991. Defendants' opposition brief is to be filed on or before June 28, 1991. The government's reply brief, if any, is to be filed on or before July 5, 1991.

IT IS SO ORDERED.