UNITED STATES of America, Plaintiff,

v.

SHEYENNE TOOLING
& MANUFACTURING
CO., INC., Defendant.

No. A3–95–110.

United States District Court,
D. North Dakota,
Southeastern Division.

Nov. 15, 1996.

John T. Schneider, U.S. Atty., Fargo, ND, Lois J. Schiffer, Matthew W. Morrison, U.S. Dept. of Justice, Washington, DC, for Plaintiff.

John H. Moosbrugger, Moosbrugger, Ohlsen, Dvorak & Carter, Grand Forks, ND, for Defendant.

## MEMORANDUM AND ORDER

VAN SICKLE, District Judge.

### I. Procedural Background

This action was brought by the United States on behalf of the Environmental Protection Agency (EPA) pursuant to Sections 307 and 318 of the Clean Water Act, 33 U.S.C. §§ 1317 and 1328. This Court has subject matter jurisdiction under 33 U.S.C. § 1319(b) and 28 U.S.C. §§ 1331, 1345 and 1355. Venue is proper in the District of North Dakota under 33 U.S.C. § 1319(b) and 28 U.S.C. § 1391(b), (c) and 1395(a) because it is the judicial district in which the Defendant is located and in which the violations occurred. Before the Court is the Plaintiff, United States' Motion for Partial Summary Judgment, filed on August 2, 1996. Defendant, Sheyenne Tooling and Manufacturing Co., Inc. (Sheyenne) responded on October 4, 1996, and the Government replied on October 28, 1996. After consideration of the parties'

briefs, relevant case law and the existing record as a whole, the Court finds as follows:

### II. Factual Background

On December 11, 1992, the EPA requested information from the City of Cooperstown (City) regarding National Pollution Discharge Elimination System (NPDES) Permit No. ND0023213, about industries in the City which discharge waste into the City's sewer system. Included was a request for a completed "Industrial User Profile." The City had Sheyenne complete a profile, which was submitted to the EPA. Sheyenne manufactured farm implements and other steel parts at Seventh and Lenham Avenues in Cooperstown, North Dakota, at all times relevant to this proceeding. Those operations have included, *inter alia*, electroplating, milling and metal finishing processes since 1979. EPA issued a Findings of Violation and Order for Compliance (Compliance Order) to Sheyenne on April 9, 1993. The Order specified that nothing in it should be construed as precluding further action, or alleviating Sheyenne from any responsibilities, liabilities or penalties. Sheyenne submitted a Baseline Monitoring Report (BMR) on June 9, 1993, and EPA has accepted the material in that report, although it has never received Sheyenne's 90 Day Compliance Report, also required under the act. The BMR, and Sheyenne's Discharge Monitoring Reports (DMR's) submitted in 1993, showed that Sheyenne was in violation of the effluent limitations, and on August 4, 1995, the United States brought this suit.

### III. Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Summary judgment will not be granted unless the moving party has established the right to a judgment with such clarity as to leave no room for controversy. *Vacca v. Viacom Broadcasting of Missouri, Inc.*, 875 F.2d 1337, 1339 (8th Cir.1989) (internal citations omitted). The evidence is viewed in the light most favorable to the nonmoving party. *Id.* at 1339. Thus, in determining whether a genuine issue has been raised, the inferences

to be drawn from the underlying facts revealed in the affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion. *See, e.g., United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). The mere existence of some alleged factual dispute, however, will not defeat an otherwise properly supported motion for summary judgment if there is no genuine issue of material fact. *Id.* If the moving party meets its initial burden of production with credible evidence which convincingly shows there is no genuine issue of material fact, the opposing party must come forward with specific facts that demonstrate a genuine issue for trial. *Elbe v. Yankton Independent School District No. 1,* 714 F.2d 848, 850 (8th Cir.1983). To defeat a motion for summary judgment, the opposing party must show that a genuine dispute about a material fact exists. A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

## IV. Analysis of Sheyenne's Liability Under the Clean Water Act

The Government alleges, and Defendant does not dispute, that Defendant has discharged pollutants in violation of effluent limits for metal finishing point sources as established in 40 C.F.R. Part 433, has failed to submit timely and complete reports required by 40 C.F.R. Part 403, and has failed to sample and analyze its regulated wastewater prior to discharge into a publicly-owned treatment works (POTW) at Cooperstown, ND, as required by 40 C.F.R. 433.15 and 403.12. *See* Pretrial Statement filed November 13, 1996, Uncontroverted Facts Nos. 5, 15, 16, 17, 18, 21, 22, 23. Defendant Sheyenne alleges however, that it is exempt from the regulations because it is a "job shop" as defined by 40 C.F.R. 433.11(c), and that it has committed no violation because it does not discharge into the navigable waters of the United States. Sheyenne further claims

that the levels of pollutants reported in its monitoring and compliance reports may not accurately reflect actual discharges, and raises the affirmative defenses of laches and equitable estoppel. These affirmative defenses are grounded primarily on Sheyenne's allegation that after the EPA issued its Compliance Order, Sheyenne chose not to close down its metal-finishing operations, thus remaining in violation, solely because EPA environmental scientist Donald L. Terrell, urged it not to close, but did not inform Sheyenne that it would continue to be liable for civil penalties of up to $10,000 per day while not in compliance. Sheyenne further argues that its good faith effort to comply with EPA regulations, and the EPA's alleged failure to notify it of the relevant regulations and to timely bring suit prevent a finding of liability.

### 1. Sheyenne Discharges Into Waters of the United States

It is undisputed that Sheyenne discharges into a Publicly Owned Treatment Works (POTW), and that the Cooperstown POTW discharges into an unnamed tributary of the Sheyenne River, thus making Sheyenne an indirect discharger, and the tributary is a Class III stream of the State of North Dakota.[1] *See* Pretrial Statement No. 13. The regulatory definition of the waters of the United States includes streams, intermittent streams and tributaries of waters of the United States. 40 C.F.R. § 230.3(s) and 33 C.F.R. § 328.3(a). The record here shows that the Cooperstown POTW discharges from three stabilization ponds into an unnamed tributary of the Sheyenne River, a creek or stream which is intermittently dry. Defendant Sheyenne's Statement of Material Facts, ¶¶ 8 and 9. However, such a stream may constitute a water of the United States, even when normally dry, i.e. intermittently wet. See, e.g. *Friends of Santa Fe County v. LAC Minerals, Inc.,* 892 F.Supp. 1333, 1335 (D.N.M.1995); *United States v. Texas Pipe Line Co.,* 611 F.2d 345 (10th Cir.1979);

---

1. "Class III streams. The quality of this class of waters shall be suitable for industrial and agricultural uses, i.e. cooling, washing, irrigation and stock watering. These streams all have low average flows, and generally, prolonged period of no flow and are of marginal or seasonal value for immersion recreation and fish aquatic biota." N.D. Admin. Code § 33–16–02 (1991).

*United States v. Zanger*, 767 F.Supp. 1030 (N.D.Cal.1991); *United States v. Phelps Dodge*, 391 F.Supp. 1181, 1187 (D.Ariz.1975). The United States has met its initial burden on this point, offering the Declaration of James L. Winters of the Army Corps of Engineers which was based on examinations of maps, photos and field inspections. Exhibit 2 to United States' Motion for Partial Summary Judgment. Sheyenne has not come forth with anything other than the bare assertion that it does not discharge into a water of the United States. Such unsupported supposition is not enough to defeat summary judgment. "When the moving party has carried its burden under Rule 56(c) its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (internal citations omitted). This Court finds that Sheyenne discharges into a water of the United States.

## 2. Sheyenne is not a job shop

■ Sheyenne asserts that it is a job shop,[2] and therefore the metal finishing point source regulations do not apply to it. Thus, this Court must determine whether as a question of law, Sheyenne fits within the job shop exception. In support of this position Sheyenne has stated in answer No. 9 to the United States' second set of interrogatories, that it owns less than 50% of the material it finishes. However, the testimony of Sheyenne's President Curtis Stokkeland establishes the following facts: according to Mr. Stokkeland's testimony, approximately 90–95% of Sheyenne's metal finishing is done for one client, Posi–Lock, for whom it buys the raw materials, manufactures, and then finishes Posi–Lock's product. The only evidence offered to support the position that this client owns any of the raw materials prior to their inclusion in a complete, finished product, is Ronald Berge's hearsay testimony

that he has been told the records support the position that Posi–Lock supplies more than 50% of what Sheyenne plates. Sheyenne has not provided adequate assurances that this testimony could be converted into an admissible form at trial, nor have any records supporting Mr. Berge's claim emerged during the discovery process. Again, Sheyenne's unsupported assertion that it is a job shop, especially in light of its President's testimony to the contrary, does not meet its burden and will not defeat summary judgment on this point.

## 3. Sheyenne Cannot Challenge Its Own Monitoring Reports

■ The efficacy, indeed the possibility, of enforcement under the Clean Water Act relies largely upon self-testing and reporting. A source may not later question its own reports[3] to the EPA as a method of avoiding liability, and such reports are considered admissions as to liability. *See United States v. Ward*, 448 U.S. 242, 247, 100 S.Ct. 2636, 2640, 65 L.Ed.2d 742 (1980); *Student Public Interest Research Group of New Jersey, Inc. v. Monsanto Co.*, 600 F.Supp. 1479, 1485 (D.N.J.1985). A wholly unsupported allegation that Defendant's reports may be inaccurate because of infrequent sampling when offered by a defendant who made no apparent effort to comply with the Clean Water Act for at least the 3 years prior to receiving a Findings of Violation and Order for Compliance from EPA, is meaningless.

## 4. Sheyenne Had Adequate Notice of EPA Regulations as a Matter of Law

■ Ignorance of the law is no defense. Sheyenne has essentially claimed that it should have been directly notified by EPA of the existence, scope and requirements of both the Clean Water Act and the accompanying regulations. This Court rejects this argument as a matter of law. See *Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 65, 104 S.Ct. 2218,

---

**2.** 40 C.F.R. Part 433.11(c) defines a job shop as "a facility which owns not more than 50% (annual area basis) of the materials undergoing metal finishing."

**3.** "Sheyenne's discharge monitoring reports were prepared by Sheyenne in the ordinary course of business, and were prepared based on the results of sampling and analyses conducted by Sheyenne or its agents." Pretrial Statement, Uncontroverted Facts, No.21.

2226–27, 81 L.Ed.2d 42 (1984); *United States v. City of Hoboken,* 675 F.Supp. 189, 199 (1987).

### 5. Sheyenne's Good Faith Effort to Comply, If Any, Is Not Relevant to Its Liability

■ The Clean Water Act imposes strict liability. Considerations such as a defendant's good faith efforts to comply are therefore only relevant in considering what penalty must be imposed after liability has been established, and this Court may consider Defendant Sheyenne's alleged good faith efforts to comply at that time. *See, e.g., Hawaii's Thousand Friends v. City and County of Honolulu,* 821 F.Supp. 1368, 1392 (D.Haw. 1993).

### 6. Affirmative Defenses

■ Defendant in its motions and pleadings invoke the equitable defenses of laches and estoppel. The Court reviews the defenses and finds each, insufficient to defeat liability. The defense of laches is applied by the court in equity, where one party has inexcusably delayed bringing the legal action, resulting in undue prejudice to the defendant. *Goodman v. McDonnell Douglas Corp.,* 606 F.2d 800, 804 (8th Cir.1979). This defense is not available to actions brought by the United States. *See, Guaranty Trust Co. v. United States,* 304 U.S. 126, 132–33, 58 S.Ct. 785, 788–89, 82 L.Ed. 1224 (1938); and, *Bostwick Irrigation District v. United States,* 900 F.2d 1285 (8th Cir.1990). Accordingly, this Court finds as a matter of law that Defendant is precluded from asserting the affirmative defense of laches in this action.

■ Defendants have also asserted a defense of equitable estoppel against the Government. The burden of proof in establishing this defense is on the party, seeking equitable sanctuary. *Heckler v. Community Health Services of Crawford,* 467 U.S. 51, 59–60, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984). Defendant must show the traditional elements of estoppel by proving the existence of a misrepresentation by the Government and that Defendant reasonably relied upon this misrepresentation to its detriment. *Id.* at 59, 104 S.Ct. at 2223. Additionally, since estoppel against the sovereign is recognized with "great reluctance", Defendant must prove a fourth element: affirmative misconduct by the Government in perpetrating its misrepresentation. *Miller v. United States Through Farmers Home Admin.,* 907 F.2d 80, 82 (8th Cir.1990); *Slagle v. United States,* 809 F.Supp. 704, 710 (D.Minn.1992). Here, Sheyenne has put forth the testimony of Ronald Berge, who claims to have been urged by EPA scientist Donald L. Terrell not to shut down its finishing operations. Mr. Berge's own notes do not show this as having been the precise substance of the conversation, and the government has offered a declaration by Mr. Terrell that he has no record or recollection of such a conversation. Further, Mr. Terrell was not the scientist assigned to the Sheyenne case, and the conversation in which he is supposed to have given Sheyenne permission to continue breaking the law appears from the record to have been the only conversation he had with the Defendant. Viewing the evidence in the light most favorable to Sheyenne, and accepting that its version of this conversation may have taken place, Sheyenne's reliance on such a conversation was not reasonable in light of the totality of the circumstances,[4] nor does the alleged sequence of events show any affirmative misconduct on the part of the Government. Defendant has not pled sufficient facts to demonstrate an entitlement to a defense of estoppel against the Government.

## V. Conclusion

### A. Issues Resolved as a Matter of Law:

For the reasons stated above,

**IT IS ORDERED THAT Plaintiff's Partial Summary Judgment Motion (Docket No's. 36, 37 & 38) IS:**

**GRANTED** on the issue of liability of Defendant under the Clean Water Act 33 U.S.C.

---

**4.** *See, e.g.,* Pretrial Statement, Uncontroverted Facts Nos. 20 and 25. *See also City of Hoboken,* 675 F.Supp. 189, 199 ("those who deal with the Government are expected to know the law and may not rely on the conduct of government agents contrary to the law.") (citing *Community Health Services of Crawford County,* 467 U.S. at 63, 104 S.Ct. at 2225).

§ 1317 and § 1318 and the pretreatment regulations promulgated thereunder.

**IT IS FURTHER ORDERED THAT:**

Defendant's defenses of Laches and equitable estoppel against the United States are **REJECTED AND DENIED SUA SPONTE** as insufficient as a matter of law.

**B.   Matters Reserved For Trial**

Trial will be held on December 2, 1996 at Fargo, North Dakota to determine the scope of liability and the amount of civil penalty. Pursuant to 33 U.S.C. § 1319(d), matters properly considered in determining the appropriate penalty for violations of the Clean Water Act include: the economic benefit resulting from the violation(s); the history of such violation(s); any good faith efforts to comply with the applicable requirements; the impact of the economic penalty on the violator; the seriousness of the offense and other such matters as justice may require. This court may consider as included within these factors the amount of actual harm, if any, to the environment. This Court will hear argument and receive evidence only on these matters.

So Ordered.